76386. WILLIAMS et al. v. PERRY et al.
(370 SE2d 836)

BIRDSONG, Chief Judge.

Carolyn and Benjamin Williams bring this appeal from the judgment of the Dade County Superior Court, denying their petition to adopt a minor child, Roger Justin Garman. Named as defendants in the adoption action were Tina Garman Perry, the mother, Ben Perry, Tina's former husband, and Randy Rayley, listed as the putative father. Ben Perry answered and filed a counterclaim requesting custody of Justin, claiming he was the natural father of the child. Tina Garman had given birth to Justin Garman out of wedlock. Thereafter, she married Ben Perry and he legitimated Justin in judicial proceedings. The appellants' adoption petition alleged that Perry was not the father and that the mother, in a sworn petition in the Juvenile Court of Hamilton County, Tennessee, identified Randy Rayley as the father.

While Tina and Ben Perry were married and living together in Tennessee, she became involved in criminal activity, and without the knowledge of her husband, she took her son to Benjamin and Carolyn Williams, her aunt and uncle, and asked them to care for Justin because she might be going to jail. Because Justin had severe medical problems, the Williamses refused to care for Justin unless they could receive legal custody. A petition was filed in the Juvenile Court of Hamilton County, Tennessee, on October 16, 1985, by Tina Perry, Benjamin and Carolyn Williams, requesting that Tina be divested of custody of Justin and temporary custody be vested in the Williamses. The putative father was listed as Randy Rayley "whose address is unknown" and the action alleged the putative father had never legitimated or supported the child in any way. The mother and the Williamses executed a sworn affidavit that these averments were truthful. On October 16, 1985, the juvenile court entered an order granting temporary custody and legal guardianship of Justin to the Williamses.

Ben Perry filed for and was granted a divorce from Tina in Tennessee and the court granted him custody of Justin. In this adoption action, the Williamses contend the legitimation of Justin and the divorce proceedings which granted custody of Justin to Perry were procured through collusion of the parties and constituted a fraud on the court involved in each case. The adoption court noted that Perry had filed an action in the Juvenile Court in Hamilton County, Tennessee, to regain custody of Justin and that the court had directed that blood tests be performed to determine the true paternity of the child. The Williamses requested a continuance of the adoption action until the results of the blood tests were known, arguing that such test "has a high degree of reliability in determining biological parentage" and if Ben Perry is not the father, he would not have standing to bring his counterclaim for custody of Justin. The results of the blood tests were stipulated in evidence and showed that "relative chance of paternity" of Ben Perry being the father of Justin was 97.59 percent.

The trial court found that Tina Garman and Ben Perry were the natural parents of Justin, and that the Williamses had pending an action in the Juvenile Court of Hamilton County, Tennessee, seeking custody of Justin, in which they alleged that Randy Rayley was the father of the child. The adoption court also found that Perry had filed a petition in the Hamilton County Juvenile Court alleging that he was the natural father of Justin and that the child's custody should be returned to him. The court also noted that Perry had been granted a divorce from Tina Garman and had been granted custody of Justin by a Tennessee court. The trial court found that Perry had attempted to utilize the court to regain custody and visitation rights of his son, and had attempted to visit with the child but had not supported the child. Based upon these facts, the court found the father had not abandoned his child and had not failed to establish a father-son relationship with his child. The trial court stated that it had been in personal contact with the judge of the Juvenile Court in Hamilton County, Tennessee, and wanted to continue the jurisdiction of that court over an award of custody of the child. Accordingly, the court declined jurisdiction to decide the counterclaim of Perry requesting custody of Justin and denied the Williamses' petition for adoption. This appeal followed. *Held*:

1. Appellants contend the findings of the trial court, that Ben Perry had not abandoned Justin, had not failed to establish a father-son relationship with the child, and the trial court's failure to find Perry had failed significantly for a period of one year or longer next preceding the filing of the adoption petition, to visit, support, or make a bona fide attempt to communicate with his child, were clearly erroneous. We do not agree.

Construing the evidence on appeal in favor of upholding the

judgment, as an appellate court is required to do, see *McLarty v. Kushner*, 173 Ga. App. 432 (1) (326 SE2d 777), we find the evidence supports a finding that Tina Garman gave birth to a child, Justin, out of wedlock. Thereafter, Tina married Ben Perry and she and Justin moved into his home in Tennessee. Perry then legitimated the child as his own through court action in Tennessee. The mother testified to the child's birth defect which required almost constant medical attention and that Perry had driven the child to Emory University Hospital "five or six times . . . [and] hundreds and hundreds of times to Chattanooga." It was also testified that Perry supported the mother and child while they were living with him. Through these actions prior to the legitimation suit, Perry perfected his "opportunity interest" in his illegitimate child and demonstrated " 'a full commitment to the responsibilities of parenthood by "com(ing) forward to participate in the rearing of his child." ' " See *In re Baby Girl Eason*, 257 Ga. 292, 295 (358 SE2d 459). During this period, it is clear that Perry had formed a father-son relationship with his child.

Thereafter the mother, without the knowledge of Perry, took Justin from his father's home in Tennessee to the Williamses. It is not clear where the Williamses were living at that time. When this action was filed, they were living in Trenton, Dade County, Georgia. Prior to that time when Tina was living with them, they were living in "LaFayette." Presumably, this is LaFayette, Walker County, Georgia. The mother also testified that the Williamses assisted her in getting Justin to and from the hospital and they lived in LaFayette at that time. However, when Tina Perry and the Williamses filed the petition for temporary custody of Justin, they listed Chattanooga, Tennessee, as their home. Venue and jurisdiction aside, the mother and the Williamses perpetrated a fraud on the Hamilton County Juvenile Court in Tennessee. The petition failed to advise the court that the mother was married and her husband had legitimated her child as his own, and that the mother and the child were then living with the father. Rather the court was advised that Randy Rayley was the putative father, and the "father's address [is] unknown in that he has never legitimated nor supported said child in any way. All parties are in agreement with this petition." The petition alleged that the child was "dependent and neglected," when in fact the child was then living with his father who was supporting the child and his mother, according to Perry's testimony. This false and misleading information was sworn to by the mother and the Williamses.

The mother testified that she visited Justin in the Williamses' home but was told he "was not mine, for me to get out of there and not to come back, and if I brought — if anyone came to get him, or I come to get him, he would shoot us." Perry testified that after he found that his wife had taken Justin to the Williamses he told her

that they would go get him and his wife told him: "Benny, he will kill you just as sure as you go over there." Perry hired a lawyer and from that time forward attempted to regain custody and gain visitation rights through the courts. Two lawyers stated that they had represented Perry for the past two years in attempting to regain custody of Justin through the courts. The second counsel for Perry stated that he had been trying for two years to gain custody and visitation rights for Perry because of "threats made to" Perry if he attempted to visit with his child. Williams denied making any "threats," but when Mrs. Williams was asked if her husband had threatened anyone, she responded: "I know that he has said a few things. . . . My husband is a hot-head, when he gets angry, and this is — this child — my husband is so attached to this child that he will fight for him." Mrs. Williams denied that her husband had made any threats to Perry personally.

The first point that we will consider is that the right of natural parents to the custody of their children is a joint right, and neither can substitute a third person for himself, and without the consent of both parents, a third person cannot gain the right of custody over a minor child, for the consent of only one parent is a nullity. *Coleman v. Way*, 217 Ga. 366, 367 (122 SE2d 104).

Our Code, OCGA § 19-8-3, provides generally that, except as specified in OCGA § 19-8-6, no adoption of a child will be permitted who has a living parent or parents except where the parent or parents have voluntarily, and in writing, surrendered all of their rights to the child to another, or their parental rights have been terminated by a court of competent jurisdiction. However, OCGA § 19-8-6 (a) provides that surrender or termination of parental rights under § 19-8-3 is not a prerequisite to adoption if the child has been abandoned. Also, OCGA § 19-8-6 (b) states that surrender or termination of parental rights is not a prerequisite to adoption pursuant to paragraph (4) or (5) of OCGA § 19-8-3 if the parent has failed significantly, for a period of one year or longer immediately prior to the filing of a petition for adoption (1) to communicate or make a bona fide attempt to communicate with the child, or (2) to provide for the care and support of the child as required by law or judicial decree, where the court is of the opinion that the adoption is for the best interests of the child.

It is not clear which of these methods is being utilized by appellants. They enumerate as error the finding of the trial court that Perry had not abandoned his minor child and the failure of the court to find that Perry has failed significantly, for a period of one year or longer next preceding the filing of the adoption petition, to visit, support, or make a bona fide attempt to communicate with his child. The petition for adoption alleges that the mother voluntarily agreed to give them custody of the child. However, we note in this connection that the consent of one parent is a nullity. *Coleman*, supra. Appel-

lants attempt to deal with the father's claim for custody by alleging that he has abandoned his child.

We will first address the issue of the allegation of error as to the trial court's failure to find that Perry had failed significantly to visit, support or communicate with his child. These facts are significant only if the "petition for adoption [is made] pursuant to paragraph (4) or (5) of subsection (a) of Code Section 19-8-3 . . ." which deals with a "parent of a child [who] has voluntarily and in writing surrendered all of his rights to the child to the spouse of the other parent" or to a listed relative. Neither of these grounds was alleged to be a basis for the adoption. Hence, this allegation for a claim of error is not meritorious as to the father. See *Howell v. Gossett*, 234 Ga. 145, 147 (214 SE2d 882).

This leaves at issue the claim of abandonment by Perry. " ' "In order to find an abandonment, there must be sufficient evidence of an actual desertion, accompanied by an intention to sever entirely, as far as possible to do so, the parental relation, throw off all obligations growing out of the same, and forego all parental duties and claims." ' " *In the Interest of S. H.*, 181 Ga. App. 438, 439 (352 SE2d 621). Whether the evidence was sufficient to establish abandonment is a question in the first instance for the trier of fact, the trial court. *In re B. D. C.*, 256 Ga. 511, 512 (350 SE2d 444). And on appeal, the appellate standard of review is whether after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parents' rights to custody were lost. Id. We find that a rational trier of facts could have found by clear and convincing evidence that the appellee father did not abandon his child, or otherwise forfeit his right to the custody of his child.

2. Because we have found no error of the trial court as to appellee Perry, the natural father of the child, any issue as to the natural mother is moot. Whether the mother is an unfit parent, has voluntarily terminated her rights, or has abandoned her child is immaterial as to the denial of the appellant's petition for adoption, where one natural parent refuses to consent to the adoption, and has not voluntarily terminated his rights to his child nor otherwise forfeited his rights to his child under applicable statutes. See OCGA §§ 19-8-3; 19-8-6.

3. The trial court did not reach a finding of "best interest of the child," but we find no error in the trial court's refusal to affirm the adoption petition.

*Judgment affirmed. Banke, P. J., and Beasley, J., concur.*

DECIDED JUNE 21, 1988.

*Barbara S. Arthur*, for appellants.
*Herbert E. Franklin, Jr.*, for appellees.