## A89A1049. GRIFFITH v. BROOKS.
### (389 SE2d 246)

BIRDSONG, Judge.

This is an appeal by the natural father of a 3-½-year-old boy, from the order granting adoption of the child to the mother's second husband. The father, Michael Griffith, Jr., is and was at the time of these proceedings serving time in Wayne County Correctional Institute for rape and aggravated sodomy. He previously had been convicted of burglary and assault involving several different incidents. He filed an answer to the petition for adoption and objected to the action.

The appeal centers entirely upon the refusal of the trial court to have Griffith transported to Gwinnett County to be present at the adoption hearing. It appears undisputed in the record that Griffith did not have the $546 which was established to be the cost of transporting him to defend the civil case which would terminate his parental rights. Much discussion was had amongst counsel and the trial court as to whether Griffith's father, Mr. Griffith, Sr., could have afforded to pay the cost of his son's transport; the trial court evidently concluded that while Mr. Griffith, Sr., clearly loved his grandson, his interest in the child was not sufficient to prompt him to pay for transport of his son to protect his parental rights in the suit filed against him, and that even though the evidence showed the grandfather, Mr. Griffith, Sr., had an income of only $675 from Social Security, he owned a house and a mobile home vehicle, and could have funded the transport of his son from prison to these adoption proceedings, or could have intervened in the matter if his interest in the boy had been sufficiently genuine.

In denying appellant's request for funds to be transported to attend the hearing on the adoption of his son, the trial court ruled: "The court feels like [on] the better side of discretion, Mr. Griffith Senior had sufficient assets in order to have gotten [Griffith, Jr.] up here if he wanted to. And if the grandfather has all that many assets and is not willing to advance the $500 to get him up here, it's pretty apparent to the court that he doesn't have a lot of interest in whether or not his boy is here to represent himself and testify in this case. . . . [DEFENSE COUNSEL]: We would submit that the issue is not the indigency of a person of the father [sic] who is not a party to this action. . . . [THE COURT]: I agree that that is the rule. However, the court doesn't sit in a vacuum, you know. Even the Supreme Court Justices invite some permanent person down there that's unique in their field to discuss with them, they've had architects and Coach Dooley to keep up with what's going on in the world. . . . Mr. Griffith Senior is here, and he also had visitation rights, and I just think that the assets are available to Mr. Griffith, Jr. to have been

here had they seen fit to do so. . . . He's had sufficient notice of this, he's been incarcerated by his own willful act, and . . . obviously, this trial judge would much, much, much prefer that your client be here. Nothing is harder in this world than to be a trial judge to try a case when one party is not here. But y'all have had ample time to get him here. And I just don't think the evidence warrants the State carrying this expense. [DEFENSE COUNSEL]: I understand the court's ruling. I was just merely pointing out that it's the indigency of the defendant in the case that we're talking about, and obviously he is in prison and is not earning any money, does not have the assets to pay for transportation, and that's why we requested that he be brought by the State. [THE COURT]: I agree. But the court's finding is not that Mr. Griffith Senior had any legal right in which to do so, but if Mr. Griffith Senior had wanted to do so, there were funds available."

The adoption hearing proceeded. The evidence showed without dispute that the child, now 3-½, had lived with his mother and Mr. Brooks (who the court ruled had at least a common law marriage) since the boy was five months old. Mr. Brooks, age 44, has a stable job earning approximately $40,000 annually. Mrs. Brooks, age 29, has worked for eight years as a bartender, and works three nights each week: on Wednesdays from 7:00 p.m. till 2:00 a.m.; on Fridays from 7:00 p.m. till 3:00 a.m. and on Saturdays from 7:00 p.m. till 2:45 a.m.

The boy's natural father was ordered in April 1986 to pay $50 per week child support. As of January 1987, he was $1,150 in arrears, having evidently paid $650. He last paid support in December of 1986. The following month, in January of 1987, he was in incarceration on the above-described charge, and has remained so since that time. There was no evidence he earns money while in prison or has any assets. His father, Mr. Griffith, Sr., testified appellant had been in an automobile accident before he was imprisoned and was unable to, or did not, work full time.

The evidence of appellant's relationship with his child came principally from Mr. Griffith, Sr., and was essentially undisputed by any competent evidence: he testified that, at least before appellant was in prison, appellant visited his son and played with him, whenever the boy visited the grandparents under their visitation privileges—every other weekend, a week at Christmas, and a week in the summer. Appellant had not visited the boy in the boy's home because he was never allowed to do so. Neither was Mr. Griffith, Sr., allowed to visit. Appellant did speak to the child on the telephone from time to time, but appellant could not call the boy at his home because this would necessitate a collect call from prison. The child's mother testified appellant had sent one Christmas card to the boy, but (perhaps because the child was less than three years old) most of it was addressed to her, although appellant signed it with "love" to his son. Mr. Griffith,

Sr., testified that the child could not be taken to prison to visit his father, but that when Mr. Griffith, Sr., visited or spoke to Griffith, Jr., appellant would ask about his son and ask to see pictures. The stepfather, Mr. Brooks, conceded that, from statements made by the child after visiting his paternal grandparents, evidently the child had spoken to his father on the telephone.

Mr. Griffith, Sr., testified that he loved his grandson and that appellant loved the boy; but, when questioned about the sincerity of his own interest in the child in view of that fact that he had not sought to intervene in the proceedings, he testified that he did not know he could intervene. (Following the grant of adoption to Brooks, the child's grandfather did file a belated motion to intervene, contemporaneous with a motion for new trial.) Appellant's attorney was asked by the court if, and how much, he was being paid to represent appellant's interests, and the attorney responded that it was less than the cost of transporting appellant to the hearing would have been.

In his order of adoption, the trial court found that the hearing was originally set for May 1988, but was continued at appellant's request so as to make arrangement to be present at the hearing; but the hearing was set again for September 20, 1988, and that appellant was not present; that his attorney requested another continuance but was denied. The trial court found as fact that the natural father "is incarcerated . . . and is serving a sentence of 15 years, to serve 12"; that, underlying that sentence, the father had entered a plea of guilty to the offense of rape and two counts of aggravated sodomy; that that same indictment showed on its face confinement, sentence, and convictions for the following felonies, to wit, four incidents of burglary, one count of robbery, and one count of aggravated assault. The court found the natural father and the mother were divorced by decree dated March 27, 1987, "and that [d]ecree required support for the minor child by the natural parent that has not been paid since the grant of the [f]inal [d]ecree."

(Appellant was incarcerated in January 1987. The child was born January 13, 1985; based upon Brooks' testimony that the child had lived with him since the boy was 5-½ months old, it must be concluded that Brooks and the mother were living together since about July 1985. The criminal acts of rape and sodomy were shown by the indictment to have been committed by appellant on September 26, 1985. The indictment was returned in April 1986, the same month he was ordered to pay $50 per week child support.)

The trial court also found as fact that despite the April 1986, order to pay $50 per week child support, that as of January 15, 1987 (12 days before he was incarcerated) appellant was $1,150 in arrears, and "has not paid any child support since December of 1986 [and n]either the natural father nor anyone on his behalf has paid any

child support since December, 1986."

The trial court also found as fact: "The record shows that the natural father does not care for the child and that no natural bond of parent and child exists between the natural father and the minor child"; and that the best interests of the child would be served by the adoption.

The final order of adoption was prepared in a proposed form by Brooks' counsel, with the court's approval. However, finding of fact no. 11 of this order shows a large portion was struck through by the trial court and appears in full with the judge's initials set out beside each strike-through, as follows: "The natural father has failed to provide support within the terms of OCGA § 19-8-6 (b) (2) ~~and the natural father has failed to communicate or make a bona fide attempt to communicate with the child as provided in OCGA § 19-8-6 (b) (1), in that he has made no effort to contact the child by telephone at the mother's residence; has talked to the child only three (3) times since his incarceration while the child was visiting with William Thomas Griffith, Sr., and mailed a Christmas card to the natural mother in December, 1987.~~" (The trial judge's initials appear at the end of each line of stricken material.) Whereupon, the trial court found in its conclusions of law, as follows: "From the foregoing findings, the natural father has failed to comply with the provisions of OCGA § 19-8-6 (a) ~~and (b)~~ [judge's initials], and the best interest of the minor child will be served by the grant of the [p]etitioner's prayer for [a]doption."
*Held:*

1. We reverse this order of adoption for illegality, but not upon the grounds emphasized by appellant concerning the refusal of the court to order the county, or some other entity, to pay the cost of transporting appellant from prison to the hearing to be present to defend against adoption of his child by another and the consequent termination of his parental rights. A judgment which is void for illegality is a mere nullity, and may be held so in any court when it becomes material to the parties to consider it; it is not necessary that the certain illegality which renders this judgment void, be raised below or else be waived, for the judgment is a nullity in the first place and cannot be relied upon. *Barrett v. State*, 183 Ga. App. 729, 730 (360 SE2d 400); *Mason v. Carter*, 223 Ga. 2 (2) (153 SE2d 162).

The findings of fact and conclusions of law do not, as a legal matter, support the order of adoption. The trial court perforce had to find grounds for this adoption in OCGA § 19-8-6, for the father refused to surrender his rights and they had not been terminated. OCGA § 19-8-3. But, the court based the order of adoption upon the legal conclusion indicated at *OCGA § 19-8-6 (a)*, which refers solely to adoption without the necessity of a surrender or termination of parental rights, by a required finding of *abandonment* of the child by the parent, (or

inability to locate the parent or insanity or other incapacitation to surrender, which are factors not pertinent to this case). There can be no mistake that the trial court concluded as a matter of law that the father had abandoned the child as referred to in § 19-8-6 (a), because the court deliberately and intentionally struck through the additional conclusion proposed by Brooks' counsel, which was a reference to § 19-8-6 (b).

Adoption laws are to be strictly construed in favor of natural parents, for the application thereof results in the severance forever of the paternal relation. *Glendinning v. McComas*, 188 Ga. 345 (3 SE2d 562); *Johnson v. Strickland*, 88 Ga. App. 281 (76 SE2d 533). Since it is crystal clear the trial court based this adoption upon the legal conclusion that appellant had *abandoned* his child, there must be in the record "clear and convincing evidence" that the natural parent's rights were lost by *abandonment*, and by no other suggested or implied cause. In *Williams v. Perry*, 187 Ga. App. 586, 590 (370 SE2d 836), we held, as we have done many times, that in order to find *abandonment*, there must be " ' " 'sufficient evidence of *an actual desertion, accompanied by an intention to sever entirely, as far as possible to do so, the parental . . . obligations growing out of the same, and forego all parental duties and claims.' " ' " (Emphasis supplied.) The appellate standard of review of a finding of abandonment is "whether after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody were lost" *in the manner found.* Id.; *In re B. D. C.*, 256 Ga. 511, 512 (350 SE2d 444).

We do not find in this record such clear and convincing evidence of *abandonment* as it is described in *Williams v. Perry*, supra, and neither, we think, did the trial court. We find no *clear and convincing* evidence to support the finding that the natural father "does not care about the child"; the undisputed testimony was to the contrary.

In fact, although the trial court found as fact "[t]he natural father has failed to provide support within the terms of OCGA § 19-8-6 (b)," this finding leads to no conclusion of fact or law: It is at best ambiguous because immediately following that statement, the court deliberately struck through, and refused to find, the proposed fact that he did so *under subsection (2)* of § 19-8-6 (b), which requires, as requisite for the finding of failing "significantly, for a period of one year or longer," the finding of a failure: "(2) to provide for the care and support of the child as required by law or judicial decree. . . ."

Not only did the trial court refuse to find an abridgement of § 19-8-6 (b) (2) as fact, but by deliberately striking through the language, it also refused to find what Brooks additionally proposed, that "the natural father has failed to communicate or make a bona fide attempt

to communicate with the child as provided in OCGA § 19-8-6 (b) (1), in that he has made no effort to contact the child by telephone at the mother's residence; has talked to the child only three (3) times since his incarceration while the child was visiting with William Thomas Griffith, Sr., and mailed a Christmas card to the natural mother in December, 1987." (Strike-throughs omitted.)

We therefore find from the face of the order that the trial court refused to find appellant had failed to support his child as it would have been required to find under § 19-8-6 (b) (2); and refused to find the failure to communicate or make bona fide attempts to communicate, as required to be found by § 19-8-6 (b) (1).

Furthermore, the *Conclusions of Law* make it very clear the basis of the adoption was *abandonment,* under § 19-8-6 (a), and that the trial court, by striking through the proposed finding of a violation of subsection (b) of that statute, specifically and deliberately refused to conclude as law that there was a significant failure to communicate and support as described by § 19-8-6 (b).

It seems clear from all of what we have just described, particularly in the face of all the evidence of records, that although deeply impressed by appellant's criminal record, the trial court itself did not find clear and convincing evidence that appellant had made an " ' " 'actual desertion, accompanied by an intention to sever entirely, as far as possible to do so, the parental relation, throw off all obligations growing out of the same, and forego all parental duties and claims.' " ' " *Williams v. Perry,* supra at 590. We also find no clear and convincing evidence supporting the finding that appellant "does not care about" the child.

In all, on the face of the trial court's order, the findings of fact do not support the conclusions of law, as to *abandonment* which was the only legal ground concluded upon which to terminate the father's parental rights. And moreover, the evidence does not show clearly and convincingly that the evidentiary standards were met for a finding of abandonment under the standard set forth in *Williams v. Perry.*

2. As to funding the transport of appellant to allow him to be present at a hearing upon Mr. Brooks' petition to sever his parental rights and adopt his child, see *Thorne v. Padgett,* 191 Ga. App. 814 (383 SE2d 160) (1989) (cert. granted).

3. Finally, while we express no opinion as to the trial court's evident conclusions that appellant's history of assaultive criminal behavior shows he is irredeemably criminal and that his sentence of incarceration to serve 12 years will destroy his ability to form any parental bond or provide support, we find it pertinent to note that the child in this case was, at the time the petition to adopt was filed, three years old. The father's absence at the hearing evidently made it impossible for him to explain and be cross-examined as to his behavior since this

child was born. The evidence *in this record* altogether does not show clearly and convincingly that the father is irredeemably criminal, or that, as of the time of the hearing below, when the child was only three years of age and the parent had been in prison for a period of only 14 months when this petition was filed, that "all the evidence was in" in the case and that it clearly and convincingly showed a present and continuing abandonment. The trial court did not find an abandonment of the child based upon the father's criminal record, and we shall not infer one.

In our ruling here, we have construed the adoption laws strictly in favor of the natural parent, as we are required to do by law. *Glendinning,* supra; *Johnson,* supra.

*Judgment reversed. Deen, P. J., and Benham, J., concur.*

DECIDED NOVEMBER 16, 1989 —
REHEARING DENIED DECEMBER 1, 1989.

*Hartley, Puls & O'Connor, Alton G. Hartley, Edward F. O'Connor, Jr.,* for appellant.

*Harrison & Harrison, G. Hughel Harrison,* for appellee.