## 66939. IN THE INTEREST OF S. M.

SHULMAN, Chief Judge.

This appeal involves the termination of parental rights pursuant to OCGA § 15-11-51 (Code Ann. § 24A-3201). The evidence adduced at the hearing revealed that appellant, the natural mother of the child, had been a drug addict for approximately 14 years, that she was at that time on probation for a shoplifting conviction, and that she was also serving a four-year sentence for prescription fraud. Several months prior to her conviction for prescription fraud, appellant was hospitalized for a condition attributed to her abuse of narcotic drugs. Appellant left her child with friends of the natural father but later became disenchanted with that arrangement. She contacted the Richmond County Department of Family and Children Services ("DFCS") and requested that it take custody of the child until appellant was released from the hospital. DFCS agreed to appellant's request but after the child was returned to the mother, a DFCS caseworker visited appellant's home and found the child unattended in a playpen for approximately 45 minutes while appellant was visiting a next-door neighbor. The child was taken from appellant and put into foster care. After appellant was incarcerated in the Macon Transitional Center pursuant to her prescription fraud conviction, she sought help in battling her drug addiction through participation in a drug therapy group. The counselor for this group testified that appellant met with her at least three times a week and had become a responsible member of the therapy group. She added that, although narcotics were available to the inmates through the prison "underground," she had no reason to believe that appellant had become involved in any way with those drugs. The cosmetology instructor at the center testified that appellant had enrolled in the cosmetology program and was preparing to obtain her license.

Another counselor at the center testified that appellant had also enrolled in the Systematic Training for Effective Parenting program. The senior counselor of the center described appellant as an exceptional student with a realistic expectation of how to provide for herself and her child. She agreed with earlier testimony that there was no evidence that appellant had used drugs since she had been at the center. It was further adduced at the hearing that appellant had enrolled in Bibb Vocational School and had obtained CETA employment in cosmetology. The child's biological father testified that he had attended parenting classes and that he and appellant planned to reestablish their relationship and maintain a home for their daughter when appellant was released. (She was eligible for parole in September of 1983.)

It was stipulated at the hearing that appellant's child was "deprived" when DFCS initially took custody, thereby leaving as the only issue the question of whether the deprivation was likely to continue. The trial court, sitting in its capacity as a juvenile court, found that appellant had led a nomadic life-style and had not maintained a stable home life. Those findings, in conjunction with appellant's past drug addiction, caused the trial court to find appellant guilty of "profoundly detrimental and egregious parental conduct" and to order that all parental rights of appellant be terminated. Appellant alleges on appeal that the evidence does not support such a finding and that the trial court committed reversible error by virtue of the manner in which it arrived at its conclusion.

1. "This court has long recognized that termination of parental rights is a severe measure. [Cits.] 'There is no judicial determination which has more drastic significance than that of permanently severing a natural parent-child relationship. It must be scrutinized deliberately and exercised most cautiously. When we do this, we make a decision on human frailties and their consequences. It becomes an agonizing undertaking.' *McCormick v. Dept. of Human Resources,* 161 Ga. App. 163, 164 (288 SE2d 120). Accordingly, 'compelling facts are required to terminate parental rights. [Cits.]' " *Heath v. McGuire,* 167 Ga. App. 489, 491 (306 SE2d 741).

OCGA § 15-11-51 (Code Ann. § 24A-3201) provides in pertinent part: "(a) The court by order may terminate the parental rights of a parent with respect to his child if: . . . (2) The child is a deprived child and the court finds that the conditions and causes of the deprivation are likely to continue or will not be remedied and that by reason thereof the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm."

"This court has made it abundantly clear that a parent's rights to his or her child will not be terminated 'without some required

showing of parental unfitness, caused either by intentional or unintentional misconduct resulting in abuse or neglect of the child, or by what is tantamount to physical or mental incapability to care for the child.' [Cits.] 'This court's decisions "have taken a stern view in cases of parental termination, sustaining such rendering only when there is evidence of profoundly detrimental and egregious parental *misconduct* underlying the deprivation and probable continued deprivation." [Cits.]' " *In the Interest of H. L. T.,* 164 Ga. App. 517, 518 (298 SE2d 33). This misconduct must be proven by "clear and convincing evidence." *Wright v. Hanson,* 248 Ga. 523 (2) (283 SE2d 882).

We are aware of the fact that the trial court has a great deal of discretion in these cases and its judgment will ordinarily not be disturbed absent a manifest abuse of this discretion. "However, the evidence must be enough to show that the deprivation found will be likely to continue and likely to cause serious harm to the child." *Collins v. Martin,* 154 Ga. App. 250, 252 (267 SE2d 858). In arriving at its conclusion that the deprivation of appellant's child would most likely continue, we believe the trial court improperly drew upon its personal knowledge of "facts" otherwise not introduced into evidence. During a summary of the evidence, the trial court stated, "The Court uses its own knowledge about the rate of recidivism in drug-related cases. That rate has been testified to many times by many psychiatrists and psychologists, and it's substantially high. The figures have been used, ninety percent rate of recidivism. Only a ten percent, or less, chance of recovery. Certainly, we'd like to see everyone be in that ten percent, without any question, but those are facts. They don't relate specifically to the parties involved here, and they are statistics and they have to be applicable in this kind of case." Courts will generally take judicial notice of "matters of common knowledge and experience. . ." *Batson-Cook Co. v. Shipley,* 134 Ga. App. 210, 212 (214 SE2d 176). "The test is (1) whether the fact is one of common, everyday knowledge that all men of average intelligence are presumed to know, and (2) whether it is certain and indisputable." Id. We believe the court's statement fails to meet either of the above criterion. Even though scores of doctors may have testified in other cases that drug addicts have a 90 percent recidivism rate, it is seriously doubtful that this knowledge or opinion is shared by the general public. Furthermore, such an assertion is far from being indisputable. While not expressly mentioned in the termination order itself, it is apparent from the record that the trial court used this information to form its conclusion that appellant's drug addiction would most likely continue and that such would render her an unfit parent. The court erred in this regard, and

therefore its decision must be reversed.

2. In its order, the trial court discredited the testimony of appellant's character witnesses because they were "overzealous" in their assertion that appellant had made an effort to and had in fact turned her life around. While recognizing the settled rule that the determination of each witness' credibility is in the sole province of the fact finder, in this case the trial court, we find it difficult to perceive a situation, absent independent impeachment, where one's zeal in defending another's character should be construed as adversely affecting the witness' credibility or veracity. The evidence presented at the hearing portrays a woman who has led a life laced with drug abuse who is genuinely attempting to overcome this dependency and to provide a stable and healthy atmosphere in which to raise her child. In *Nix v. Dept. of Human Resources,* 236 Ga. 794, 795 (225 SE2d 306), Justice Ingram wrote: "There can scarcely be imagined a more fundamental and fiercely guarded right than the right of a natural parent to its offspring. To terminate that right is to sever that right for the future as effectively in law as if it never had existed. It is a tearing of the flesh and it can be done by the court only under the most carefully controlled and regulated circumstances for the sake of the child. There must be compelling facts to establish the necessary lack of 'proper parental care or control' justifying the government's intrusion in cutting natural family ties." The only evidence of actual neglect by appellant was the isolated incident where she left the child alone for approximately 45 minutes. While such behavior is reprehensible, we do not believe that this incident, together with all the other evidence in this case, is so compelling as to clearly convince a rational trier of fact that the child's past deprivation will continue so as to authorize the total termination of appellant's parental rights. See *Blackburn v. Blackburn,* 249 Ga. 689, 694 (292 SE2d 821).

*Judgment reversed. McMurray, P. J., and Birdsong, J., concur.*

DECIDED DECEMBER 2, 1983 —
REHEARING DENIED DECEMBER 20, 1983.

*Vicky O. Kimbrell, Lisa J. Crisher, John L. Cromartie, Jr., William J. Cobb,* for appellant.

*John B. Long, Max Rubenstein, Michael J. Bowers, Attorney General, H. Perry Michael, First Assistant Attorney General, Carol A. Cosgrove, Senior Assistant Attorney General, David C. Will, Assistant Attorney General,* for appellee.