179 Ga. App. 346 (1986)
346 S.E.2d 121
IN RE N. F. R.
72320.
Court of Appeals of Georgia.
Decided June 10, 1986.
Katherine D. Arrington, Clifford B. Reece, for appellant.
Josephine L. Hunnicut, Joseph M. Winter, Robert E. Hall, Michael J. Bowers, Attorney General, William C. Joy, Carol A. Cosgrove, Senior Assistant Attorneys General, David C. Will, Assistant Attorney General, for appellee.
SOGNIER, Judge.
This is an appeal by the mother and father of an eleven-year-old girl from an order of the Juvenile Court of Fulton County terminating their parental rights in the child.
In 1981, the mother and the Fulton County Department of Family and Children Services (DFCS) executed a contract in which the mother stipulated that the child was deprived and consented to the petition for temporary custody made by DFCS. The contract further set forth what the mother needed to do in order to regain custody of the child. At the time of the 1981 petition, a third party was apparently named as the child's biological father; however, it was stipulated by counsel that the father-appellant here became the legal father of the child in 1982. DFCS became aware of the father in 1983 when an extension of the 1981 order was due to expire. DFCS obtained a second order which extended the 1981 order for another two years on the bases that the mother had failed to comply with the terms of the contract she had executed, that she was incarcerated at the time of the petition and that she was unable to provide for the child. No action at any point was taken by the father to obtain custody of the child. In 1985, DFCS brought the instant petitions alleging the child to be deprived and seeking termination of the parental rights of both the mother and the father.
1. The evidence at the hearing as to the father revealed that although the father legally acknowledged the child as his own and lived in the house with the child and her mother, he took no interest in the child nor responsibility for her. When conditions in the home became unbearable for him because of the mother's drug problems, he left the home but took no action to likewise remove the child, despite the fact he was steadily employed at the time and enjoyed the rent-free use of a large residence. In 1983 the father had a stroke which, according to testimony at the trial, has left him partially dependent on others to assist him in the day by day care and responsibilities of himself and his household. A DFCS caseworker testified that the father on numerous occasions both before and after the stroke had informed her he was not interested in assuming any responsibility for the child. The trial court found that the only manifestation of interest the father has made toward the child was his action in contesting the instant proceedings.
"A termination hearing seeks as a major concern the welfare of the child, with due regard for the rights of the parents. [Cits.] In determining the balance of the interests of the children against parental rights, the juvenile court is vested with broad discretion which will not be controlled on appeal in the absence of manifest abuse, where *347 the ruling is supported by clear and convincing evidence. [Cits.] The evidence supporting the findings and determination of the trial court meets the clear and convincing standard set forth in our statute and mandated by the due process clause of the U. S. Constitution. [Cits.]" In the Interest of W. J. J., 176 Ga. App. 824, 826 (338 SE2d 54) (1985).
2. The evidence adduced at the hearing as to the mother consisted of testimony by a former DFCS caseworker and by the mother. The mother was questioned in detail about her long and sordid history with drugs, the rehabilitation programs and counseling she had attended, the facts surrounding her arrests, convictions and incarcerations, her work record and her homelife. As to her present condition, the mother testified that prior to her arrest for prescription forgery, she had been off drugs for a year, was attending counseling and working 14-16 hours a day, but she became involved with a former convict acquaintance in the forgery of prescriptions and that it was this involvement, rather than use of drugs, which led to her present incarceration. The mother acknowledged that her release date from prison had been extended 30 days as discipline for use and possession of drugs. The mother explained she and two other women had been moving furniture out of a prison day room when some Tylenol-4 pills were discovered in a couch. All three women were tested immediately for drug use and the mother's test returned negative. The mother denied owning or using the drugs in prison and testified that "they wrote all three of us up for it" because all three were present when the drugs were found. When questioned about her plans after release, the mother testified that she had an offer of employment at the office of a chiropractor for $225 a week, that she would be residing with her father, and that she would be returning to drug counseling. As to her child care plans, the mother testified she intended to put the child in day school and pay her medical bills, and that she "was checking into [day care] but they never gave me any hope of getting her back whatsoever."
The former DFCS caseworker testified that the child has a heart murmur which requires medication, that the child is hyperactive and is under a tremendous amount of stress. The witness acknowledged that the mother visited the child on numerous occasions except when incarcerated, that the mother generally attended DFCS's panel discussions about the child, that the mother showed some interest in the child, and that the mother cares about the child. The witness stated that the child cares for her mother but that the witness thought "[N. F. R.] has had many, many disappointments . . . but I think that the bond or the trust there is not there."
The trial court also heard testimony by N. F. R. who stated she knew who her parents were and that she loved her mother but that *348 she did not "feel too good about her from what I hear" from her foster parents about her mother's incarceration.
OCGA § 15-11-51 (a) (2), the relevant statute, provides: "The court by order may terminate the parental rights of a parent with respect to his child if: . . . (2) [t]he child is a deprived child and the court finds that the conditions and causes of the deprivation are likely to continue or will not be remedied and that by reason thereof the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm." This court has long recognized that termination of parental rights is a severe measure. See Nix v. Dept. of Human Resources, 236 Ga. 794, 795 (225 SE2d 306) (1976). "There is no judicial determination which has more drastic significance than that of permanently severing a natural parent-child relationship. It must be scrutinized deliberately and exercised most cautiously. When we do this, we make a decision on human frailties and their consequences. It becomes an agonizing undertaking." McCormick v. Dept. of Human Resources, 161 Ga. App. 163, 164 (288 SE2d 120) (1982). Accordingly, "[c]ompelling facts are required to terminate parental rights. [Cits.]" Hooks v. Baldwin County DFCS, 162 Ga. App. 142, 144 (290 SE2d 356) (1982).
"`A termination of parental rights must be supported by a showing of parental unfitness, caused either by intentional or unintentional misconduct resulting in abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child.' [Cit.]" In re A. M. & V. M., 178 Ga. App. 59 (342 SE2d 16) (1986). A finding of unfitness must be based on present circumstances. Wright v. Hanson, 248 Ga. 523, 525 (2) (283 SE2d 882) (1981); Bozeman v. Williams, 248 Ga. 606, 607 (285 SE2d 9) (1981). "We are aware of the fact that the trial court has a great deal of discretion in these cases and its judgment will ordinarily not be disturbed absent a manifest abuse of this discretion. `However, the evidence must be enough to show that the deprivation found will be likely to continue and likely to cause serious harm to the child.' [Cit.]" In the Interest of S. M., 169 Ga. App. 364, 366 (312 SE2d 829) (1983). It is axiomatic that the appropriate standard of review of the trial court's ruling is whether a rational trier of fact could have found by clear and convincing evidence that the natural parent's rights had been lost. See In re A. M. & V. M., supra.
We agree with the mother that the evidence of her purported parental unfitness considered by the trial court consisted of episodes which occurred in the past, and that there is no clear and convincing evidence of her current unfitness. While the mother's life has been marked by a recurring pattern of drug abuse, crime and incarceration, there was no compelling evidence presented which would clearly convince a rational trier of fact that the child's past deprivation will continue *349 so as to authorize the total termination of the mother's parental rights. See In the Interest of S. M., supra; see also Harper v. Dept. of Human Resources, 159 Ga. App. 758 (285 SE2d 220) (1981). Therefore, that part of the trial court's order totally terminating the mother's parental rights is reversed.
Judgment affirmed as to the father; judgment reversed as to the mother. Banke, C. J., and Birdsong, P. J., concur.