A94A1695. In the Interest of E. B., a child.
(450 SE2d 341)

Smith, Judge.

This is an appeal by a father from an order of the juvenile court terminating his parental rights. The order also terminated the mother's parental rights, but she does not join in this appeal. Appellant contends the trial court, based on the evidence presented, could not have made a finding of "present parental misconduct" sufficient to support a termination of his parental rights.

Before considering whether to enter an order terminating parental rights, the court must first determine whether there exists "clear and convincing evidence of parental misconduct or inability. . . ." OCGA § 15-11-81 (a). To reach this determination, the court must find the child is deprived within the meaning of OCGA § 15-11-2 (8) due to a lack of proper parental care or control by the parent in question, that this state of affairs is likely to continue or is not likely to be remedied, *and* that such deprivation will or is likely to cause the child serious physical, mental, emotional, or moral harm. OCGA § 15-11-81 (b) (4) (A). If the court makes this preliminary determination based on clear and convincing evidence, termination of parental rights is authorized if the court likewise finds such action will best serve the child's interest and needs, "including the need for a secure and stable home." OCGA § 15-11-81 (a). As an alternative, the court may conclude that the child's interest and needs will be best served by disposition under OCGA § 15-11-34. OCGA § 15-11-81 (c).

The appellant and the child's mother were both arrested on burglary charges in April 1991, when the child was one year of age. Upon a finding that the child was deprived, she was placed in the temporary legal custody of the local Department of Family & Children Services (DFCS). In support of that action, the juvenile court found, among other things, that at the time her parents were arrested "[t]he residence appeared to be unkept [sic] and dirty with food and piles of clothes in various places"; that "[t]he child was unclean and found sleeping on a thin mattress on the floor in a room with piles of clothes and trash scattered about"; that the child had no shoes to wear; and that the child had "not received necessary immunization shots."

In July 1991, appellant and his wife were convicted on the burglary charge. Appellant was sentenced to serve 20 years in prison. Appellant subsequently pled guilty to one felony count and eleven mis-

demeanor counts of criminal issuance of a bad check and received various sentences to run concurrently with his twenty-year burglary sentence.

No meaningful case plan was established to reunify appellant with the child during his incarceration, and appellant otherwise made little contact with E. B. of his own volition during that time. The child was placed with appellant's sister for several months during his incarceration. Appellant sometimes called his sister from prison, and on such occasions she offered to put the child on the phone. However, appellant explained that he did not always respond positively to that suggestion because "[a] lot of times I couldn't hear [the child] because we was living in a prison dormitory. It was very loud and was like a waste of money for me to try to talk to her because I couldn't understand a word. If she did talk on the phone, [my sister] would have to repeat what she said. All I could ever hear her say was 'Daddy, Daddy, Daddy.' That was all I could hear."

Appellant was released from prison on parole in April 1993, two years after he was originally taken into custody. He did not visit his child, however, until the end of the following month. The court found that all contacts with the child were incidental to scheduled court hearings and case reviews. Appellant testified during the petition hearing that he never "had a way to go" — that he "just never had any money."

Appellant was again arrested after his release from prison in June 1993, and charged with DUI, although he represented to the court that the charge (which was still pending at the time of the termination hearing) had been reduced to unlawful possession of alcohol on federal government property. The court also noted appellant's extensive previous criminal history, which included "no less than 7 felonies in various Florida and Georgia counties" since 1978, and also noted he had been imprisoned "approximately 13 of the last 15 years." The court found the child deprived due to parental misconduct, concluding that appellant's "long felony record and resulting imprisonment for all but four months of the child's life have had a demonstrable negative effect on the quality of his relationship with [his child]," and again noting his lack of significant contact following his most recent release from prison and the subsequent violation of the law while on parole. The court also concluded that the deprivation was likely to continue and "to cause serious physical, mental, emotional, or moral harm." We find this evidence sufficient under OCGA § 15-11-81 and the applicable case law to authorize a rational trier of fact to consider whether termination of appellant's parental rights was in the child's best interest. See generally *Blackburn v. Blackburn*, 249 Ga. 689 (292 SE2d 821) (1982). The termination order reflects that the court did not merely act on its authority to consider termination under the

facts, but also found that termination of appellant's parental rights was in the best interest of the child. We therefore find no error.

In support of his position, appellant argues that no realistic unification plan was ever created or adopted by DFCS and that DFCS never had any intention of reunifying appellant and his child. However, no evidence upon which the trial court relied in making its determination can properly be attributed to any alleged failings of DFCS. Except, perhaps, to the extent DFCS might be said to have affirmatively interfered with appellant's ability to maintain a relationship with his child, it is solely the judgment of the juvenile court, and not the actions of DFCS, that are under review here.

Appellant also argues that, contrary to the court's findings of fact, he visited with the child on two occasions not incidental to case reviews or court hearings. However, appellant does not suggest the court's conclusion might have differed had it duly noted those two visits, and it does not alter our view of the sufficiency of the evidence as a whole to authorize the judgment.

Appellant also argues that his situation is no different from that presented in *In re N. F. R.*, 179 Ga. App. 346 (346 SE2d 121) (1986). We disagree. As in the present case, the mother of N. F. R. had a long criminal history to overcome. That case, however, is otherwise distinguishable on its facts. Specifically, the undisputed evidence as a whole strongly suggested that the mother was determined to break with her criminal past and to become reunited with and properly raise her child. A long criminal history *alone* could not be convincingly relied upon to predict the mother's future behavior in such a case.

While appellant here has made overtures suggesting a willingness to make the changes necessary to raise his child, the evidence also indicates that since his release he has threatened caseworkers, that his encounters with the law have continued, and that his efforts to maintain contact and reunite with E. B. have been decidedly minimal. Accordingly, this case is readily distinguishable from *N. F. R.*, supra. Compare *In the Interest of S. B.*, 188 Ga. App. 364 (373 SE2d 46) (1988).

*Judgment affirmed. Pope, C. J., and McMurray, P. J., concur.*

DECIDED NOVEMBER 22, 1994.

*Kinney, Kemp, Pickell, Sponcler & Joiner, Tracey S. Witt*, for appellant.

*Michael J. Bowers, Attorney General, William C. Joy, Senior Assistant Attorney General, Teresa E. Lazzaroni, Assistant Attorney*

*General, David T. Blackburn,* for appellee.