A94A1977. IN THE INTEREST OF S. B. H., a child.
(456 SE2d 620)

SMITH, Judge.

The father of S. B. H., a two-year-old child, appeals from the order of the juvenile court terminating his parental rights. OCGA § 15-11-80 et seq. The mother's rights were also terminated, but she does not join in this appeal.

Appellant, who is incarcerated, shows, among other things, that he has never been previously convicted of a crime; that he has never received a disciplinary report; that he is considered a minimum secur-

ity prisoner; that during his incarceration he has worked toward an associate's degree in business and is due to graduate from Massey Business College in December 1994; that appellant has two other children from a previous marriage with whom he has a normal parent-child relationship; and that upon his release appellant has arranged to live with his sister, then lease a house and begin to build back his business.

"Before considering whether to enter an order terminating parental rights, the court must first determine whether there exists 'clear and convincing evidence of parental misconduct or inability. . . .' OCGA § 15-11-81 (a). To reach this determination, the court must find the child is deprived within the meaning of OCGA § 15-11-2 (8) due to a lack of proper parental care or control by the parent in question, that this state of affairs is likely to continue or is not likely to be remedied, *and* that such deprivation will or is likely to cause the child serious physical, mental, emotional, or moral harm. OCGA § 15-11-81 (b) (4) (A). If the court makes this preliminary determination based on clear and convincing evidence, termination of parental rights is authorized if the court likewise finds such action will best serve the child's interest and needs, 'including the need for a secure and stable home.' OCGA § 15-11-81 (a). As an alternative, the court may conclude that the child's interest and needs will be best served by disposition under OCGA § 15-11-34. OCGA § 15-11-81 (c)." *In the Interest of E. B.*, 215 Ga. App. 326 (450 SE2d 341) (1994).

The juvenile court concluded that "the evidence is clear and convincing that there has been parental misconduct or inability authorizing a termination of parental rights" as outlined under OCGA § 15-11-81 (b) (4) (A) (i-iv). Appellant essentially argues that the numerous positive factors offered for the court's consideration preclude such a conclusion. We disagree.

The juvenile court found: that "the parents have abandoned the child";[1] "that since the child was placed in the custody of [the local Department of Family and Children Services the child's] parents have not provided any financial, moral, physical or emotional support";

---

[1] It appears that appellant did not "abandon" his child in the legal sense, because there is not sufficient evidence that he *intended* that result. See *Thrasher v. Glynn County Dept. of Family &c. Svcs.*, 162 Ga. App. 702 (293 SE2d 6) (1982) ("In order to find an abandonment, there must be sufficient evidence of an actual desertion, accompanied by an intention to sever entirely, so far as possible to do so, the parental relation, throw off all obligations growing out of the same, and forego all parental duties and claims. [Cit.]") This distinction makes little difference from the child's perspective, since appellant has made no effort to meet S. B. H.'s needs (including prenatal care) to the extent it was within his power to do. Given this, and the fact that the juvenile court did not base its authority to terminate on an "abandonment" under OCGA § 15-11-81 (b) (3), there can be little doubt as to what the juvenile court meant by its finding that appellant "abandoned" S. B. H. Viewed in its proper context, the court's finding is supported by the record.

that, although incarcerated, appellant had "substantial abilities to make and have contact with the child, [and] has *totally and completely failed to do so* for a period of approximately two (2) years, or for the entire life of said child," despite making weekly contact with other family members; that appellant disposed of substantial assets while reserving none "for the care, protection or benefit of this child"; that appellant, despite his financial position, allowed the child to be maintained "*solely* at the expense of the State"; that no effort was made to send cards on birthdays and holidays; that appellant's crimes constitute "acts of moral turpitude [creating] a serious doubt as to the moral fitness of [appellant] to *ever* adequately parent this child";[2] that appellant's tentative parole date "is currently fixed for August, 1998," and; that the child has no awareness of appellant as a parental figure. (Emphasis in original.)

Appellant's efforts to make the best of his situation and to better himself while in prison are certainly laudable, but that was not the deciding question before the juvenile court. The record shows by clear and convincing evidence that, despite appellant's efforts toward personal betterment and future success, the restrictions upon his freedom to act due to his incarceration are not in themselves sufficient to explain, justify, or in any way excuse his total lack of effort to contact or provide parental support of any kind for S. B. H. during the child's entire life. See OCGA § 15-11-81 (b) (4) (C) (i-ii).

The juvenile court was authorized under the facts to consider termination by clear and convincing evidence, and those facts likewise support the court's conclusion that termination was in the child's best interest. OCGA § 15-11-81 (a), (b) (4) (A) (i-iv).

*Judgment affirmed. Beasley, C. J., Birdsong, P. J., Pope, P. J., Andrews, Johnson, Blackburn and Ruffin, JJ., concur. McMurray, P. J., dissents.*

McMurray, Presiding Judge, dissenting.

" ' "Clear and convincing" is a more stringent standard than "preponderating" and requires a greater quantum and a high quality of proof in [the proponent's] favor. (Cit.)' *Barber v. Perdue*, 194 Ga. App. 287, 289 (390 SE2d 234) (1989). Accord *Clarke v. Cotton*, 263 Ga. 861, 862, n. 1 (440 SE2d 165) (1994)." *In re Estate of Burton*, 265 Ga. 122 (453 SE2d 16) (1995). As my view of the quality of the evidence (largely disputed) adduced in the case sub judice differs from

---

[2] Appellant pled guilty to, among other things, two counts of enticing a child for indecent purposes. According to appellant's own testimony at the termination hearing, he took nude pictures of S. B. H.'s mother and his 16-year-old son's 13-year-old girl friend together in a jacuzzi. Moreover, the photographs discovered by police were not the product of a single, ill-considered episode, but were taken over a two-week period.

that of my colleagues in the majority, I respectfully dissent from the judgment affirming the order of the Clayton County Juvenile Court terminating the parental rights of the natural father in his two-year-old child, S. B. H. It is my view that, no rational trier of fact could find by clear and convincing evidence that the father has lost *all* parental rights to S. B. H. Also, I believe the juvenile court erred in failing to consider whether continued temporary custody of S. B. H. in foster care would be an appropriate remedy for the father's *temporary* inability to care for the infant.

The termination petition, filed on January 18, 1994, alleges the natural mother of S. B. H. had abandoned the infant and the mother's whereabouts were unknown; that the natural father's last known address was the Scott Correctional Institute in Hardwick, Georgia; that while the "natural mother was married to the legal father at the time of said child's birth . . . , the natural father did not provide support . . . or medical care," either during the pregnancy or during hospitalization; that the father has had no contact with the child since the child was two months old, which was insufficient to establish any familial bond between himself and the child; and that the father has made no attempt to contact or support the child since that time. The mother did not appear at the hearing. The father appeared, represented by court-appointed counsel.

The evidence adduced before the juvenile court showed the following: S. B. H. was born on April 17, 1992. S. B. H. has been in foster care since the age of three months. S. B. H.'s mother has failed to overcome alcohol and drug addictions, and failed to meet the goals of a family reunification plan formulated with the Clayton County Department of Family & Children Services. The father was married to the mother at the time of S. B. H.'s birth but has since sought a divorce. He has been incarcerated since before the birth of S. B. H. For the past 18 months, he has been at the Scott Correctional Institute in Hardwick, Georgia, after pleading guilty to a drug possession charge and to two counts of enticement of a minor (not S. B. H.) for indecent purposes. For these offenses, he received a ten-year sentence, to serve eight years. The natural mother brought S. B. H. to visit him twice in April 1992, but since that time she has abandoned the child. When she attempted to leave the three-month-old S. B. H. in the care of the paternal grandmother, the grandmother protested, claiming that she was too ill at the time to care for the infant. Instead, the grandmother telephoned 911, thus initiating S. B. H.'s being placed in emergency foster care. Temporary custody of S. B. H. was granted to the Clayton County Department of Family & Children Services which placed the infant with a foster mother. By court order dated January 19, 1994, temporary custody was extended for an additional two years.

S. B. H. has been in the foster care of the foster mother since

"July of 1992." The foster mother affirmed that there had been "[no] attempt to contact [the foster mother] by [the father] directly[, . . . specifically,] no telephone, no letters, no cards[.]" The foster mother acknowledged that the paternal grandmother sought and exercised visitation with S. B. H. The foster mother would like to adopt S. B. H. if that were possible. The foster mother never attempted to contact the father and did not know whether he had access to her telephone "number, or [her] address[.]" The foster mother testified that as a result of her experience, she was aware that a natural parent could communicate with a child in foster care via the caseworker from the Department of Family & Children Services, without needing to know the foster parent's address or telephone number. The paternal grandmother once gave S. B. H. a doll and offered an Easter blanket, but the foster mother "didn't go to [the paternal grandmother's] over the Easter holidays."

Heather Payne of the Clayton County Department of Family & Children Services has been the caseworker assigned to S. B. H. since December 1992. After the natural mother participated in the formulation of a reunification plan, "she contacted the agency once, requesting to voluntarily surrender her rights for SBH, but she did not follow through with that scheduled appointment." Ms. Payne "[has] not [personally] observed the child [in foster care]. The foster parents live out of county, and [the Clayton County Department of Family and Children Services has] what is called . . . courtesy supervision through that county, and they send . . . correspondence indicating how the placement is." Ms. Payne has never spoken with the father, explaining that "when someone's incarcerated in an area that is that far from [our agency], that we go through . . . correspondence." She has never attempted to formulate a family unification plan for the father, opining in a report to the juvenile court that his "incarceration [is a barrier] to compliance." In that same report, Ms. Payne indicates that, among the paternal relatives who could be contacted, "no one in the family would be willing [or physically able] to care for S. B. H." She acknowledged receiving a letter from the father in December 1993 in which he indicated that "he was aware that the custody was being reviewed for SBH, and that he was in agreement that it be extended for two years." According to Ms. Payne, "when we received the letter, we were beginning . . . to pursue the termination of parental rights. The letter [she] sent in response to [the father's letter] was, . . . notifying him of our intent [to terminate his parental rights]." Ms. Payne was aware that the father has two children from his previous marriage, but had never spoken with either of them and was unaware that a son was then 20 years old.

At the time of the hearing, the natural father was 44 years old. After his 1988 divorce from his first wife, the father lived with the

natural mother of S. B. H. for two years before they married. The natural mother is 19 years his junior. While she was pregnant with S. B. H., the father was jailed on the charges of enticement of a minor for immoral purposes and drug possession. The enticement charges involved photographs taken by him of his then girl friend, along with the 13-year-old girl friend of his 16-year-old son, naked in a jacuzzi tub. Neither certified copies of the guilty pleas nor the photographs themselves were introduced in evidence at the termination proceeding.

The father has completed almost two years of the eight-year prison portion of his sentence. During his incarceration, he has pursued an associate's degree in business administration through Massey Business College, and has been a "model prisoner" who has acquired no disciplinary reports. He is applying for statewide trustee status, pursuant to which he would be permitted to leave prison and visit family on his holidays. Before his incarceration, he had been successfully self-employed: He was a commercial landlord, owning two small shopping centers, and owned and operated his own business for eighteen years. In 1988, he had an income of more than $140,000. The two shopping centers were subsequently sold "[before] the child was under the custody of DFACS[.]" All of his money "was spent on lawyers," while the proceeds of the sales of the shopping centers were turned over to his ex-wife, who held "a hundred thousand dollar alimony judgment." Upon his anticipated release from prison, the father planned to stay with his sister in Jonesboro, Georgia, and start anew in his former carpet business. However, he could not offer with reasonable certainty any date of imminent or eventual parole, other than the end of his eight years, which had been calculated as August 1998. When asked why he had not been in contact with his child, he replied: "I have not had that luxury. They have not provided me with any address, any phone number, um, even on visitation that my mom's, um, despite my recommendation to bring [S. B. H.] down there [to Hardwick, Georgia], has not been available. Either by the foster parents or DFACS." He conceded he "[never sent] a card to [his] mama's house . . . to give . . . to SBH[, . . . explaining:] because you know, the age of two years old. . . ." He affirmed that, but for his incarceration, he would "be with [S. B. H., . . . and would support S. B. H. . . . one] hundred percent." He "[asked] for some kind of extension, so [he] can have the opportunity to try to get out [on parole and] straighten [his] life out." Although the paternal grandmother has never petitioned for custody of S. B. H., she felt she was capable of caring for the child, "if [she] had a little help." She "mentioned [to the DFACS caseworker] that [the father] would love to see the baby." She receives photographs of S. B. H. from the foster mother and "[gives] the photographs to [the father]."

The juvenile court determined that S. B. H. was deprived and that the parents had abandoned the child. Specifically, the court found that during the two-year period the father has been incarcerated, he failed completely to make any effort to contact the child despite having weekly contact with his own mother, who is accorded visitation of S. B. H. by the foster parents. Furthermore, the father made no effort to provide material support despite having "disposed of substantial assets with a value estimated to be well in excess of ONE HUNDRED THOUSAND DOLLARS ($100,000.00) . . . , none of which were made available for the care, protection or benefit of this child[,]" leaving the State to maintain the child in a foster home. Moreover, the juvenile court determined that he failed to send the child any sort of card, or gift on holidays and the child's birthday. In his sole enumeration, the natural father challenges the sufficiency of the evidence to terminate his parental rights.

1. " ' "In order to find an abandonment, there must be sufficient [clear and convincing] evidence of an actual desertion, accompanied by an intention to sever entirely, as far as possible to do so, the parental relation, throw off all obligations growing out of the same, and forego all parental duties and claims." ' *Sims v. Sims*, 171 Ga. App. 99, 100 (318 SE2d 805) (1984); *In re J. C. P.*, 167 Ga. App. 572, 573 (307 SE2d 1) (1983)." *In re B. D. C.*, 256 Ga. 511, 512 (350 SE2d 444). "[T]he facts in an abandonment case must be construed in the parent's favor and against the abandonment, *Meyers v. State*, 124 Ga. App. 146, 148 (183 SE2d 42) (1971)[.]" *Thrasher v. Glynn County Dept. of Family &c. Svcs.*, 162 Ga. App. 702 (293 SE2d 6). Due process of law requires that before parental rights may be terminated predicated upon an alleged abandonment of parental responsibilities for failure to provide support for the child, clear and convincing evidence must show that such failure to provide support was wilful or otherwise without justifiable cause. *Thorne v. Padgett*, 259 Ga. 650, 651 (386 SE2d 155) (interpreting former OCGA § 19-8-6 (b)).

In the case sub judice, the evidence tending to support the determination of the juvenile court that the father has abandoned S. B. H. is the undisputed circumstance that he has not made any effort to contact the two-year-old S. B. H. directly while the child has been in foster care and also the undisputed fact that he has not contributed financially to the child's support. This circumstantial evidence of "an actual desertion, accompanied by an intention to sever . . . the parental relation" must be juxtaposed with the equally undisputed circumstance that defendant has been incarcerated since before the birth of S. B. H. and no longer is gainfully employed. He was never informed of any address for the foster mother. Moreover, there is no evidence the caseworker ever informed him she would forward his communications to the child or to the foster family. The father's stated intent

was to rebuild his life with S. B. H. upon his release from prison, where he has been a model inmate. Other unrefuted evidence showed that the father wrote to the clerk of the juvenile court to "contest the petition to terminate [his] parental rights." Both the father and the paternal grandmother testified that she was the vehicle by which he sought to maintain some connection (as opposed to direct contact) with his infant child while he was in prison. The paternal grandmother testified without contradiction that he would always ask her about S. B. H. and wanted her to bring him pictures of the child. On his behalf, the paternal grandmother inquired of the foster mother whether the foster mother would take S. B. H. to Scott Correctional Institute but was informed by the foster mother that "unless they could go down there, too, and [supervise the] visit, . . . they wouldn't go."

"Clear and convincing" evidence has been articulated in part as: " 'Evidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion.' " *Clarke v. Cotton*, 263 Ga. 861, 863 (440 SE2d 165) (Jackson, Judge, concurring). "[T]he appropriate standard of appellate review in a case of this sort is whether after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody were lost. *Sims v. Sims*, [171 Ga. App. 99, 100 (318 SE2d 805)], citing *Blackburn v. Blackburn*, 249 Ga. [689, 692 (292 SE2d 821)]." *In re B. D. C.*, 256 Ga. 511, 512, supra. The reviewing court is compelled to defer to the lower court in the area of factfinding and should affirm unless the appellate standard of review is not met. *In the Interest of L. F.*, 203 Ga. App. 522, 523 (417 SE2d 344). In the case sub judice, given the uncontradicted and unrefuted explanations offered in mitigation of the undisputed fact that the father has not communicated directly with his two-year-old child and has not contributed financially to the child's support while he was incarcerated, I find "no showing of an actual desertion, nor of any intention to sever entirely the parental relation on the part of [the natural father]." *Sims v. Sims*, 171 Ga. App. 99, 101, supra. See also *Griffith v. Brooks*, 193 Ga. App. 762, 765 (1), 766 (389 SE2d 246). Consequently, the termination of the father's parental rights cannot be sustained on the ground that he has abandoned S. B. H. within the meaning of OCGA §§ 15-11-2 (8) (C) and 15-11-81 (b) (3).

2. It is a "constitutional requirement that a natural parent's rights in his child may not be terminated absent a showing, by clear and convincing evidence, of his unfitness." *Thorne v. Padgett*, 259 Ga. 650, 651, supra. " 'OCGA § 15-11-81 (a) provides a two-step procedure to be followed in considering the termination of parental rights. First,

the court shall determine whether there is present clear and convincing evidence of parental misconduct or inability as provided by OCGA § 15-11-81 (b). Secondly, "(i)f there is clear and convincing evidence of such parental misconduct or inability, the court shall then consider whether termination of parental rights is in the best interest of the child, . . ." OCGA § 15-11-81 (a).' *In the Interest of A. T.*, 187 Ga. App. 299, 301 (2) (370 SE2d 48)." *In the Interest of J. M. K.*, 189 Ga. App. 140, 141 (375 SE2d 131). "[Parental] misconduct or inability may be found if, inter alia, the child is found to be a deprived child as defined in OCGA § 15-11-2 [(8)]; this deprivation results from a lack of proper parental care or control; the lack of care or control is likely to continue or will not likely be remedied; and this continued deprivation will or is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-81 (b) (4) (A). A finding of unfitness must center on the parent alone, and must be based on clear and convincing evidence of present unfitness, not merely upon evidence of past unfitness. *In the Interest of H. L. T.*, 164 Ga. App. 517, 520 (298 SE2d 33) (1982)." *In the Interest of J. L. M.*, 204 Ga. App. 46 (1), 47 (418 SE2d 415).

In the case sub judice, the juvenile court determined that S. B. H. was deprived within the meaning of OCGA § 15-11-2 (8); that the lack of parental care or control is the cause; that such cause of deprivation is likely to continue or will not be remedied were the child returned to one of the parents; and that continued deprivation is likely to cause serious physical, mental, emotional or moral harm to the child. In addition to finding that S. B. H. was deprived due to the failure of the father to support his child financially, the juvenile court found that the criminal charges to which the father pled guilty were "acts of moral turpitude [creating] a serious doubt as to the moral fitness of [the natural father] to *ever* adequately parent this child." (Emphasis in original.) The father contends the evidence is insufficient to support these conclusions of the juvenile court.

The juvenile court made no finding that the father's failure to support S. B. H. was wilful or was unjustified, despite his testimony attempting to explain his situation. To the extent[3] that any assets he held, or the proceeds thereof, were subject to execution of a judgment lien in favor of his ex-spouse, the voluntary transfer of assets in satisfaction of that judgment, standing alone, would not be a wilful or unjustified failure to provide support within the meaning of OCGA § 15-11-2 (8) (A) and *Thorne v. Padgett*, 259 Ga. 650, 651, supra. As to the juvenile court's finding of moral unfitness based upon the father's

---

[3] "Divorce judgments [for permanent alimony payable in stated monthly installments] are an exception to the rule [of OCGA § 9-12-80] that all the property of the defendant is bound from the date of the judgment." *Cale v. Hale*, 157 Ga. App. 412, 413 (277 SE2d 770).

convictions for prior acts of enticing a minor for indecent purposes, I note that unfitness must be based on present circumstances. " '(E)vidence of past unfitness, standing alone, is insufficient to terminate the rights of a parent in his natural child; clear and convincing evidence of *present* unfitness is required.' *Blackburn v. Blackburn*, supra at 692; *Wright v. Hanson*, 248 Ga. 523 (2) (283 SE2d 882) (1981)." (Emphasis in original.) *In re J. C. P.*, 167 Ga. App. 572, 574 (307 SE2d 1). Imprisonment alone does not automatically authorize a termination of parental rights premised upon parental unfitness; there must be circumstances in aggravation. *In the Interest of L. F.*, 203 Ga. App. 522, supra; *In the Interest of S. K. L.*, 199 Ga. App. 731, 733 (405 SE2d 903); *In the Interest of H. L. T.*, 164 Ga. App. 517, 519, supra. See also *In the Interest of K. M. H.*, 209 Ga. App. 194, 196 (433 SE2d 117).

In the case sub judice, the father's inability to provide financial support or any parental care and control stems directly from his imprisonment. His convictions are based upon prior acts which, while involving female nudity, were not acts of sexual or physical abuse directed at S. B. H. Compare *In the Interest of G. L. H.*, 209 Ga. App. 146, 148 (433 SE2d 357), where "the father had touched G. L. H.'s vagina . . . [and] engaged in parental misconduct and physical abuse of J. D. H. . . ." These offenses also are unrelated to any deprivation of S. B. H. due to the absence of the natural mother. Compare *In the Interest of J. L. M.*, 204 Ga. App. 46 (1), 48, supra, where the "appellant [natural father] violently murdered the children's mother and another person within the children's hearing and then left the children alone with the bodies for six hours. . . ." The record in the case sub judice shows only the fact of incarceration based on past acts and the present inability to provide support and parental care and control as evidence of parental unfitness. However, all things remaining equal, that inability amounting to unfitness is temporary and *must* end no later than August 1998, when his incarceration will terminate without any early release or parole as a model prisoner. I am " 'aware of the fact that the [juvenile] court has a great deal of discretion in these cases and its judgment will ordinarily not be disturbed absent a manifest abuse of this discretion. "However, the evidence must be enough to show that the deprivation found will be likely to continue and likely to cause serious harm to the child." (Cit.)' *In the Interest of S. M.*, 169 Ga. App. 364, 366 (312 SE2d 829) (1983)." *In re N. F. R.*, 179 Ga. App. 346, 348 (2) (346 SE2d 121). "In view of the above noted factors, the [juvenile] court's order [terminating the father's parental rights in S. B. H. should be] vacated and the case . . . remanded for reconsideration [of whether his failure to support S. B. H. is wilful or unjustified]. In the event the [juvenile] court determines upon reconsideration of [all the pertinent] evidence that the

child's needs may adequately be met by [the extension] of temporary custody [in the Clayton County Department of Family & Children Services and of foster care, to which the father already has consented], as opposed to complete severance of all parental rights, [it is noted] that such a disposition is expressly authorized by OCGA § 15-11-[81 (c) and § 15-11-34 (a) (2)]." *Jones v. Dept. of Human Resources*, 168 Ga. App. 915, 916 (310 SE2d 753).

DECIDED MARCH 8, 1995 —
RECONSIDERATION DENIED MARCH 28, 1995 — 

*Randall L. Keen*, for appellant.
*Michael J. Bowers, Attorney General, Teresa E. Lazzaroni, Assistant Attorney General, Foster & Foster, John A. Kimbell, Tarey B. Schell*, for appellee.