A96A1796. IN THE INTEREST OF R. J. P. et al., children.
(476 SE2d 268)

Judge Harold R. Banke.

In this appeal from a juvenile court order terminating the parental rights to two minor children, the appellant father enumerates four errors. Only the father pursued this appeal.

The evidence presented at the parental rights termination hearing revealed that the father was frequently incarcerated over the past 20 years for such offenses as breaking and entering with intent to commit larceny, escape, carrying a concealed weapon, and being an habitual felon. He did not attend the termination hearing due to his incarceration in Michigan on a probation violation. The mother testified that the father had not been employed since approximately 1979. The father has provided no financial support to R. J. P. and T. M. P. since their births in 1990 and 1992 respectively. Before the family moved to Georgia for no more than three months in early 1993, Michigan authorities had been notified that the children were abused.

In late April 1993, the Whitfield County Juvenile Court adjudicated R. J. P. and T. M. P. deprived. At a hearing on the matter, the father admitted he was destitute and unable to care for his children and had difficulty controlling his temper. Specifically, the father admitted to abusing the children both verbally and physically.

After the children were adjudicated deprived, the father returned to Michigan where he was incarcerated. The children were placed in a foster home and the foster parents wish to adopt them. Believing that the adoption would be in the children's best interest, the mother did not contest the termination of her parental rights.

At the termination hearing, a neighbor testified that he constantly heard the father verbally abusing the children. After he witnessed the three-year-old R. J. P. wander around her yard and into the woods on a cold morning clothed only in a diaper, the neighbor retrieved her. He testified that the parents never came looking for her and when he eventually carried the child to their door, the father grabbed her and slung her on the couch, swearing at her and calling her stupid. On another occasion when the child was outside on a cold morning in only a diaper, the father reached down, grabbed R. J. P. by the hair and pulled her up the trailer steps. After the father slammed the door, the neighbor heard crying.

In the two years before the termination hearing, the father sent no cards or gifts to the children, but wrote twice to his Georgia Department of Family & Children Services ("DFCS") caseworker to inquire about the children and to ask her to express his love to them. On one occasion when the father telephoned the caseworker, he told her he was in counseling. After hearing the evidence, the juvenile

court concluded that there was clear and convincing evidence of parental misconduct and that the children's best interests would be served by terminating the parental rights. *Held*:

1. Based on the above-stated facts, a rational trier of fact could find clear and convincing evidence of parental misconduct and inability. *In the Interest of E. B.*, 215 Ga. App. 326 (450 SE2d 341) (1994); OCGA § 15-11-81 (a). The record is replete with evidence that the children were deprived and the parents were the cause. OCGA § 15-11-81 (b) (4) (A) (i) and (ii). It shows the father verbally and physically mistreated the children, provided no financial support to them, and did not keep them clean. The fact that the father made little or no effort to support or even contact his children in the two years since the deprivation hearing demonstrates that such deprivation is likely to continue, as does his failure to implement the DFCS plan or to discuss his inability to comply with it or seek its modification. OCGA § 15-11-81 (b) (4) (A) (iii). In addition, the court properly considered the impact of the incarceration on the quality of the parent-child relationship. OCGA § 15-11-81 (b) (4) (B) (iii). Notwithstanding the father's argument to the contrary, the court's findings of fact were sufficient to demonstrate that termination of the father's parental rights was in the children's best interest and the record clearly substantiates these findings. We find that a rational trier of fact could have found clear and convincing evidence to support the termination of the father's parental rights. *In the Interest of R. L. M.*, 221 Ga. App. 343 (471 SE2d 245) (1996). The trial court therefore did not err in denying the father's motion to dismiss.

2. The trial court did not err in basing its decision in part on the father's failure to comply with the DFCS case plan. OCGA § 15-11-81 (b) (4) (C) (iii) authorizes the court to consider such failure. The father's plan required him, inter alia, to "maintain regular and consistent contact" with the children. His incarceration did not prevent him from writing to or calling the children. "[N]o evidence upon which the trial court relied in making its determination can properly be attributed to any alleged failings of DFCS." *In the Interest of E. B.*, 215 Ga. App. at 328. Moreover, the record demonstrates that the father's failure to comply with the DFCS plan was only one of many reasons his parental rights were terminated.

3. We reject the father's contention that the trial court violated the Equal Protection Clause by refusing to make arrangements for him to attend the termination hearing as it would have for a prisoner incarcerated in Georgia. Appointed counsel attended the hearing in the father's stead.

The Equal Protection Clause mandates that the State treat all similarly situated persons alike. *Ferros v. Ga. State Patrol*, 211 Ga. App. 50, 53 (4) (b) (438 SE2d 163) (1993). Because the father is incar-

cerated in Michigan, his claim that the trial court was required to treat him as though he were a Georgia prisoner lacks merit. He is not similarly situated. Nor has he addressed the jurisdictional impediments inherent in his argument. Moreover, we observe nothing in the record indicating that the father attempted to participate in the hearing via telephone, as did the children's mother and grandmother. Under these circumstances, we find the trial court's refusal to arrange for the father to attend the termination hearing was not error. Accord *Matter of Adoption of Quenette*, 341 NW2d 619, 622 (4) (N.D. 1983); see *Griffith v. Brooks*, 193 Ga. App. 762, 765 (1) (389 SE2d 246) (1989) (declining to reverse based on the court's failure to arrange for inmate father's appearance at termination hearing). Further, pretermitting the question of error, by failing to specify exactly what testimony he would have provided at the termination hearing, the father failed to show any harm caused by his absence. See *Hunt v. State*, 204 Ga. App. 799, 802 (5) (420 SE2d 656) (1992).

4. The trial court did not err in declining to place the children with the father's aunt and uncle. The record shows that these relatives were not suitable due to the insufficiency of their housing and income. Neither the uncle nor aunt worked, both survived on government assistance, and more than one observer expressed concern that their eagerness to obtain custody of the children was motivated by plans for the children to qualify for disability benefits. The aunt and uncle missed the first two months' payments on their new trailer, owed some $2,000 to the local power company, and their application to become licensed foster care providers in Michigan was denied. Notwithstanding the father's inference to the contrary, nothing required the trial court to pay these non-parties' travel expenses to attend the second termination hearing. Although the court limited their testimony at the first hearing to the ways they could assist the father should he regain custody and reside with them, their testimony as well as the other evidence addressing their ability to care for the children was sufficient to enable the court to ascertain their suitability. " 'The trial court had the opportunity to question and observe the parties, and possesses a wide discretion in determining the issues before him, and if the judgment is supported by any evidence and is not clearly erroneous, an appellate court is not authorized to set it aside.' [Cits.]" *In the Interest of C. N. G.*, 204 Ga. App. 239, 240 (3) (419 SE2d 42) (1992). The trial court did not abuse its discretion. *In the Interest of D. T.*, 221 Ga. App. 328, 330 (2) (471 SE2d 281) (1996). Further, we find nothing in OCGA § 15-11-90 precluded the trial court from including its finding of unsuitability in the parental termination order.

*Judgment affirmed. Beasley, C. J., and Birdsong, P. J., concur.*

Decided August 30, 1996 —
Reconsideration dismissed September 17, 1996.

*Nancy E. Bradshaw*, for appellant.

*Michael J. Bowers*, Attorney General, *William C. Joy*, *Stephanie M. Baldauff*, Senior Assistant Attorneys General, *Shalen A. Sgrosso*, Assistant Attorney General, *Waycaster, Morris, Johnson & Dean*, *Cynthia N. Johnson*, *Michael R. McCarthy*, *Jerry W. Moncus*, for appellee.