## 77555. MURPHY v. SUDDETH.
(375 SE2d 253)

DEEN, Presiding Judge.

In February 1984, while a student at a Statesboro, Georgia, college, appellant Murphy became involved with appellee Suddeth, who lived and was working in the vicinity. In December 1984 she became pregnant and left college to return to her parental home. Appellant and her mother met with appellee's mother the following February and informed her of the pregnancy; the latter's response was to deny that her son, appellee Suddeth, was the father, a response in which she was subsequently joined by appellee. Appellee allegedly subsequently rejected expressly the idea of marriage.

During the remainder of the pregnancy and during the first two-and-one-half years of the child's life, appellee allegedly offered no financial support to mother or child and maintained no contact. In November of 1985, while appellant and the three-month-old infant were visiting relatives in the Statesboro area, appellant allegedly offered

appellee's parents (intervenors below) an opportunity to see the child, but they declined. During this period appellant asked appellee's parents for financial help and also sought and received from the DeKalb County Department of Family and Children's Services (DFACS) financial assistance to cover hospital expenses and child support. DFACS subsequently requested reimbursement from appellee but received no response. Meanwhile, appellee's mother began sending payments to appellant which the latter received "under protest."

In January 1988 appellee filed a legitimation petition, and the following April the parental grandparents filed for intervention, seeking grandparent visitation rights. On April 26 appellee was ordered to make weekly child support payments of $50.00. Two of the payments were apparently late, and on May 20 appellant filed a motion for contempt.

After a May 1988 hearing, the Gwinnett County Superior Court on June 10, 1988, entered an order which, *inter alia*, granted legitimation and visitation rights to appellee, ordering him to make regular weekly child support payments of $60; and, while denying intervenors' petition, provided that the paternal grandparents share in the visitation. Ms. Murphy filed a motion for reconsideration, and, upon denial, has appealed from this order. She enumerates as error (1) the trial court's granting paternal [*sic*] rights to appellee; (4, 5) the denial of her motion for contempt and to compel discovery; (2, 3, 6) the trial court's findings that appellee had not abandoned his "opportunity interest," that he had provided support and established a parental bond, and together with "all parties" was fit to have custody, and that he was not desirous of abandoning the child or any rights pertaining thereto; (8, 9) that the trial court had applied improper evidentiary standards; (7) that permitting the father to seek legitimation two and one-half years after the child's birth violated the mother's constitutional equal protection rights in that a mother has only ten days after the child's birth to decide whether to let it be placed for adoption; and (10) that the trial court erred in considering visitation rights during a legitimation hearing. *Held*:

1. Georgia law has consistently favored the preservation of the relationship between biological parents and their children. "There can scarcely be imagined a more fundamental and fiercely guarded right than the right of a natural parent to its offspring," intoned the Supreme Court in *Nix v. Dept. of Human Resources*, 236 Ga. 794 (225 SE2d 306) (1976). "Seldom does the State wield so awesome a power as when it permanently cuts the family ties between parent and child," echoed this court in *R. C. N. v. State*, 141 Ga. App. 490, 491 (233 SE2d 866) (1977). The State has established rigorous standards for the termination or severance of the parent-child bond. See, e.g., OCGA § 15-1-81; *Blackburn v. Blackburn*, 249 Ga. 689, 692 (292

SE2d 821) (1982).

This is true whether the child was born in or out of wedlock, and whether the non-custodial parent has disavowed the relationship and its concomitant duties from the time of the child's birth (or even before), or has relinquished or abandoned those duties during the off-spring's infancy or childhood. See *In the Interest of C. T.*, 185 Ga. App. 561 (365 SE2d 117) (1987). See also *Quilloin v. Walcott*, 443 U. S. 246 (98 SC 549, 54 LE2d 511) (1978).

In the instant case the trial court applied the "best interest of the child" standard for settling custody disputes between parents to the adjudication of a controversy over whether or not the father should be permitted to legitimate his child and to visit her. The evidence can be construed as showing that from the time he learned of the child's mother's pregnancy until more than two years after the child's birth, the father both negligently and affirmatively ignored his daughter's existence, making no contribution to her support and making no direct inquiries as to her welfare and progress; that the DeKalb County DFACS was called upon to provide child support and did so, and notified the father of his financial obligation, but with no success; that appellee/father's parents began tendering some support payments and making some overtures towards the child in the form of phone calls, gifts, etc.; that in conjunction with the legitimation petition appellee was ordered to make regular weekly support payments and that, although there was some question as to the timeliness and sufficiency of certain of these payments, they had all been made as of the time of the filing of the instant appeal. On the other hand, there is evidence that the custodial parent (appellant here) needed financial assistance (she sought such assistance from the DFACS, as noted supra, and alleged that she "practically had to beg" the father's parents for assistance). We note from the trial court's June 1988 order that the mother has been awarded permanent custody, and that the visitation rights awarded the father are structured on a graduated scale of frequency and duration such as would minimize the likelihood of psychological harm to a child of tender years.

2. Although we can sympathize with the plight of a mother who must make the important decision whether or not to place her child for adoption within the short space of ten days, we do not find this proposed analogy to appellee's alleged two-and-one-half year wait before beginning legitimation proceedings to be apposite, either in fact or as a matter of law, to the case at bar. We therefore find no equal protection violation (Enumeration 7). Our further study of the record persuades us that there was no error in the trial court's denial of appellant's motions for contempt and to compel discovery (Enumerations 4 and 5), as both were moot. As to the enumerations regarding evidentiary standards, it is true that (contrary to appel-

lant's assertions) in a custody proceeding the standard as between parents is "best interest of the child." See, e.g., *Quilloin,* supra. Because the instant case does not involve a custody proceeding as such, however, the rule is inapposite here. Appellant is likewise in error as to the evidentiary standard for showing unfitness. See *Miele v. Gregory,* 248 Ga. 93 (281 SE2d 565) (1981); *Blackburn v. Blackburn,* supra. Appellant shows neither how the evidentiary standards are applicable in the instant case nor what harm, if any, she has suffered from their application *vel non* to the case at bar. These enumerations (8, 9) are also without merit.

3. In *In re Baby Girl Eason,* 257 Ga. 292 (358 SE2d 459) (1987), the baby's father filed a legitimation petition when he learned that the child, with whom he had had no contact since birth, had been placed for adoption and that a suitable couple were actually seeking to adopt her. The evidence, although conflicting, appeared to show that the father had provided no financial support for either mother or child and had not otherwise displayed any interest in the child prior to learning of the proposed adoption. The Supreme Court determined that the biological father of an illegitimate child may, if he fulfills certain criteria, have a constitutionally protected "opportunity interest" that gives him certain rights, including, *inter alia,* those of legitimating the child and even of gaining custody. The court remanded the case for the trial court's determination of whether the father had "abandoned his opportunity interest through his conduct with regard to [the mother] and the child and otherwise." Id. at 297. The court then held, "If it is determined that the opportunity interest has not been abandoned [,] then the court must determine whether [the father] is a fit person for custody. If he is fit, legitimation should be granted. If not, it should be denied." Id.

In the instant case the trial court expressly found that the father had not abandoned his opportunity interest and that "all parties" were fit. Although the custody issue *per se* is not involved here, the standard enunciated in *Eason,* supra, seems to mandate that appellee Suddeth be permitted to legitimate his child. It would naturally follow that it was proper for him to have visitation rights. Such determinations are within the trial court's sound discretion and, absent abuse, that discretion will not be disturbed. Appellant's second, third, and sixth enumerations are devoid of merit.

4. We find no merit in appellant's remaining enumerations. The trial court's findings of fact and conclusions of law, as incorporated in the order from which this appeal is taken, would seem to comport with both the letter and the spirit of applicable law.

*Judgment affirmed. Sognier, J., concurs. Carley, J., concurs in the judgment only.*

216

*Robert F. Coheleach*, for appellant.
*Robert S. Lanier, Jr.*, for appellee.