A93A2079. HARDY v. ARCEMONT. ·
(444 SE2d 327)

BEASLEY, Presiding Judge.

Cameron Arcemont, a Mississippi resident, filed the present petition in Muscogee County to legitimate Nicholas Hardy. We must construe "the county of the residence of the child," which is locus, as it appears in OCGA § 19-7-22. This will determine whether the court had jurisdiction, which is the primary issue in this appeal.

Under OCGA § 9-11-12 (d), jurisdictional questions involving factual issues may be tried by the court before trial. *Watts v. Kegler*, 133 Ga. App. 231, 233 (3) (211 SE2d 177) (1974). On appeal, the court's finding on a factual issue will be sustained if there is evidence which authorized the finding. Id. We view the evidence in this light.

The child's mother, Cathy Hardy, married Dr. Michael Hardy in 1982, but they were divorced by a final judgment of divorce entered by a Mississippi court on April 1, 1988. Nicholas was born on September 10, 1988, approximately five months later. Hardy was listed as the father on the child's birth certificate.

Hardy testified that although he continued to have sexual relations with Cathy until he filed for divorce on January 22, 1988, he previously had an operation that more than likely rendered him sterile. After the operation, he was tested for sterility and found to have one sperm but it was not motile.

At Hardy's request, the complaint for divorce and the decree incorporated a separation agreement which stated that "no children have been born to the parties, nor are any expected of their marriage union." Hardy testified that he knew at least in February 1988 that Cathy was pregnant, and that she had told him that she had sexual relations with Arcemont and that there was a very good chance that Arcemont was the father. Both Arcemont and the child have blond hair, whereas Dr. and Mrs. Hardy both have dark hair. A photograph

of the child and Arcemont shows a strong resemblance.

Arcemont testified that he met Cathy in Mississippi in December 1987 and had sexual relations with her on one occasion that month. In March 1988, she called and told him she was pregnant and he was the father. He first saw Nicholas the day before Father's Day 1989 and started paying child support that month. He, Cathy, and the child took an HLA blood test in August 1989. It showed a 99.48 percent likelihood that Arcemont is the father. Arcemont established a parental relationship with the child, who referred to Arcemont as his father, and he saw the child frequently for a period of one-and-one-half to two years.

Hardy also paid child support, saw the child, established a parental relationship with him, and the child also referred to him as his father.

Cathy moved with the child to Columbus, Georgia, in February 1991. Afterward, she became ill with cancer and curtailed Arcemont's visits with the child. He told her he wanted custody of Nicholas if she could not take care of him. On February 19, 1993, she wrote him a letter stating that she was returning child support checks from him and his mother, and that out of love and concern for Nicholas' future she had made a decision for Nicholas to live with her brother and his wife in the event she no longer was able to take care of him. As a result, Arcemont obtained a lawyer and wrote Cathy a letter stating that he intended to seek custody of Nicholas if something happened to her. He attached an affidavit for her to execute acknowledging him as the father.

On February 22, while on her death bed, Cathy executed an affidavit stating, inter alia, that Hardy is the child's father and that she wanted her son to be in the custody and "possession" of Hardy at her death. On February 25, she gave the child to her mother's boyfriend, who delivered the child to Hardy's present wife in Selma, Alabama. She transported him to Mississippi. Cathy died in Columbus on March 1.

Unaware of these events, on March 2 Arcemont filed the present petition in Columbus to legitimate the child. After being informed that Cathy had died, Arcemont amended his petition to allege that at the time it was filed the child was residing in Georgia and that the superior court in Muscogee County has jurisdiction because that was the county of the child's residence. Hardy learned of Arcemont's petition, applied to intervene for the purpose of objecting to jurisdiction, and responded. He asserted that the child is the legitimate child of Hardy and that Arcemont, Hardy, and the child are Mississippi residents.

At a hearing, the court granted Hardy's application and heard evidence on the question of its jurisdiction. Finding that Arcemont

had rebutted the presumption that the child is legitimate and had proven by overwhelming evidence that he is the father, the court concluded that upon Cathy's death, Hardy did not become entitled to custody and that the child remained a resident of Muscogee County notwithstanding the fact that he had been transported to Mississippi. Accordingly, the court overruled Hardy's objection to jurisdiction. The court also held that since the presumption of paternity has been rebutted, Hardy lacked standing to object. We granted his application for interlocutory appeal. OCGA § 5-6-34 (b).

1. Under Georgia law, all children born in wedlock or within the usual period of gestation thereafter are legitimate, but the legitimacy of such a child may be disputed; where possibility of access exists, the strong presumption is in favor of legitimacy and the proof must be clear to establish the contrary. OCGA § 19-7-20 (a), (b). Issue of adulterous intercourse is born out of wedlock. OCGA § 19-7-23.

A father of a child born out of wedlock may legitimate the child by petitioning the superior court of the county of his or the child's residence. OCGA § 19-7-22. By legitimating the child, the biological father becomes recognized in law as the father and obtains custody rights. OCGA § 19-7-25; *Pruitt v. Lindsey*, 261 Ga. 540, 542 (407 SE2d 750) (1991). The domicile of a child born out of wedlock is that of the child's mother; otherwise, the domicile of a child is that of his or her parents; if the parents are divorced, the child's domicile is that of the custodial parent. OCGA § 19-2-4 (a).

Where the parents of a child are divorced, upon the death of the custodial parent legal custody automatically reverts to the other parent and the child's domicile becomes that of the other parent, unless such parent has voluntarily relinquished parental control to another. *Abrams v. Daffron*, 155 Ga. App. 182 (270 SE2d 278) (1980) and cit.; OCGA § 19-9-2.

Based on *Meredith v. Meredith*, 257 Ga. 458 (360 SE2d 586) (1987), Hardy argues that since he was the child's "legal" father at the time of the mother's death, custody automatically reverted to him in Mississippi, the child has become a Mississippi resident, and the Georgia court lacks jurisdiction of this dispute wherein all the parties are Mississippi residents.

Under *Macuch v. Pettey*, 170 Ga. App. 467 (317 SE2d 262) (1984) and *Fleeman v. Dept. of Human Resources*, 208 Ga. App. 97 (430 SE2d 135) (1993), rev'd on other grounds, *Dept. of Human Resources v. Fleeman*, 263 Ga. 756 (439 SE2d 474) (1994), Hardy is collaterally estopped from claiming paternity because of the disclaimer of paternity in the parties' divorce decree and supporting evidence. As to collateral estoppel generally, see *Green v. Thompson*, 208 Ga. App. 609 (431 SE2d 390) (1993).

Consequently, Hardy did not become entitled to custody upon

the mother's death under OCGA § 19-9-2. Nor could the mother unilaterally substitute Hardy as the child's legal custodian for herself without the consent of the other parent. *Williams v. Perry*, 187 Ga. App. 586, 589 (1) (370 SE2d 836) (1988). Therefore, the child remains a domiciliary and legal resident of Georgia, for the purposes of the legitimation proceeding under OCGA § 19-7-22. This distinguishes *Meredith*.

There is no merit in Hardy's argument that under *Hill v. Adams*, 182 Ga. App. 848 (357 SE2d 300) (1987), Arcemont must bring a paternity action establishing the child as illegitimate prior to bringing a legitimation action. The child in *Hill* had been adjudicated to be the child of the mother's husband as a matter of law in a divorce action. *Hill* held that the man who asserted that he was the biological father had to bring a paternity action, establishing himself as the father and the child as illegitimate, before proceeding to legitimate the child. In the eyes of the law in this case, on the other hand, the overwhelming evidence renders the child illegitimate.

2. The next question is whether Hardy retains standing to object to Arcemont's legitimation petition.

Under the circumstances of this case, the standard which must be used to determine Arcemont's right to legitimate the child is his fitness to have custody. *Doe v. Chambers*, 188 Ga. App. 879, 880 (1) (374 SE2d 758) (1988), citing *In re Baby Girl Eason*, 257 Ga. 292, 297 (358 SE2d 459) (1987); see *Murphy v. Suddeth*, 189 Ga. App. 212, 215 (3) (375 SE2d 254) (1988) (physical precedent only); but compare *In re Ashmore*, 163 Ga. App. 194 (293 SE2d 457) (1982). While Hardy is not the child's "legal" father, he is the physical custodian to whom the mother entrusted the child. He has also provided child support, visited the child, and established a parental relationship with him. No blood relative of the deceased mother is seeking custody. We hold that he has standing to challenge Arcemont's right to custody. See *Sims v. Pope*, 228 Ga. 289 (185 SE2d 80) (1971); compare *In re Pickett*, 131 Ga. App. 159 (205 SE2d 522) (1974).

*Judgment affirmed in part and reversed in part. Cooper and Smith, JJ., concur.*

DECIDED APRIL 1, 1994 —
RECONSIDERATION DENIED MAY 17, 1994 — 

Hirsch, Partin & Grogan, John P. Partin, for appellant.
Warren S. Shulman, for appellee.