## A97A0457. GRICE v. DETWILER et al.

(488 SE2d 755)

SMITH, Judge.

In 1996, Orie Jon Grice brought a petition to establish his paternity and legitimate Shirley Mae Detwiler's son, who is now 14 years old. See OCGA §§ 19-7-22; 19-7-43 (a) (5). The trial court, after a bench trial, denied Grice's petition. We granted a discretionary appeal to review the trial court's decision. Because this case is controlled by our decision in *Ghrist v. Fricks*, 219 Ga. App. 415 (465 SE2d 501) (1995), we affirm.

In 1981 and 1982, Detwiler lived with Richard Ogle and had sexual relations with him. She ended that relationship on April 21, 1982, married Grice on June 11, 1982, and moved to Texas with him. Seventeen days later, Detwiler separated from Grice; she returned to Georgia and filed for divorce. Grice learned during the brief marriage that Detwiler was already pregnant; the child was born on January 18, 1983, seven months after the brief marriage and nine months after Detwiler's relationship with Ogle ended. Although Grice expressed his willingness to treat the child as his own and continue the marriage, Detwiler insisted on a divorce. She amended her complaint to recite that it was physically impossible for Grice to be the child's father and that he would have no parental rights to the child.

While Detwiler and her mother told Grice that the child was not his, Grice testified that at the time of the divorce he hired a local attorney specifically to investigate the issue of paternity because he "still wasn't sure" despite the assurances of Detwiler and her mother. He testified that he relied on a letter from that attorney stating that Grice's, the mother's, and the child's blood groups were dispositive of nonpaternity without further testing: "[T]hat's what I thought that [the attorney] had done because of that letter." According to Grice, he relied on "the attorney and the paper work and then what Shirley

and her mom had told me."[1] Grice filed no defense to the divorce, and the January 3, 1983 decree is silent on the issue of children.

In June 1983, Detwiler married Ogle and at approximately the same time successfully petitioned to have the child's last name changed to Ogle. Detwiler assured Ogle he was the child's biological father, and for the next 12 years Ogle and the child believed this to be true. Detwiler and Ogle lived as husband and wife for approximately two years, and a second child was born to them during that time.

Detwiler and Ogle later divorced. The 1989 divorce decree refers to both children by the last name of Ogle and as "issue of this marriage." Detwiler was given custody of the children, and Ogle was required to make child support payments. In 1995, after Detwiler became addicted to crack and was imprisoned on cocaine charges, custody of the children was given to Ogle; he, Detwiler, and Detwiler's mother then became involved in an extended and acrimonious custody battle. In January 1996, this culminated in a decision by Ogle and his present wife not to allow the children to visit Detwiler's mother.

Later in the spring of 1996, Detwiler's mother, asserting that she was concerned for the child's welfare, contacted Grice and told him that the child was his biological son. In July, Grice filed his petition to legitimate the child and for custody.

Detwiler did not testify at the hearing in this action, but Detwiler's mother appeared on Grice's behalf and gave extensive testimony asserting that Ogle was not a suitable father for the child. She attributed to Ogle the child's misbehavior, adjudication of delinquency, and placement in a "boot camp." See OCGA § 42-8-35.1. She also testified that she and Detwiler lied to Grice in 1982 because they believed he would seek custody and take the child to Mexico, although she stated no factual basis for this belief and Grice has no apparent connection with that country. Grice elicited testimony that Ogle has been incarcerated on marijuana charges and that he has struck his present wife.

Ogle, relying on *Ghrist*, supra, moved to dismiss Grice's petition on the ground that the 1983 divorce decree constituted res judicata or collateral estoppel on the issue of Grice's paternity. The trial court orally denied Ogle's motion on the ground that "this *Ghrist* case . . . is a summary judgment case, so I don't think I can dismiss without hearing the evidence on all these matters." After hearing the evidence, the trial court observed, "I don't believe in dismissals because

---

[1] Contrary to the representation that Grice claims was made by his attorney, in 1983 an HLA blood test to establish paternity was available and legally sanctioned in Georgia. See *Roddenberry v. Roddenberry*, 255 Ga. 715, 717 (342 SE2d 464) (1986).

I think they are usually dilatory, but I'm going to rule on the merits and enter judgment for defendant Ogle and deny the petition for paternity and legitimation." The court entered an order denying the petition on the basis that it was not in the child's best interests.

Ogle contends that consideration of the child's best interests is unnecessary because the issue of paternity was raised in Grice's 1983 divorce action, Grice had the opportunity to establish paternity, and he abandoned that opportunity by failing to answer the petition. We agree with Ogle that Grice is barred from seeking relief.

This case is controlled by *Ghrist,* supra, which involved a strikingly similar and belated allegation of paternity. As in *Ghrist,* a divorce decree exists stating clearly that this child was the issue of that marriage. Here, as there, the ex-wife sought to attribute paternity to another man after raising the child as offspring of this marriage for an extended period of time: three years in *Ghrist,* but thirteen years in this instance. As in *Ghrist,* the putative father from outside the marriage seeks to establish paternity.

The only distinction here is that the putative father from outside this marriage was briefly married to the mother rather than engaged in an extramarital liaison. We therefore have not one but *two* divorce decrees to consider, one now eight years old and the other now fourteen years old. Relying on the principles established in *Ghrist,* we conclude that these final, unappealed, and mutually consistent judgments must be left undisturbed.

Like the putative father in *Ghrist,* Grice was fully aware of a question regarding his paternity but failed "to take any steps to conclusively resolve the issue." *Ghrist,* supra at 417. Grice asserts that Detwiler and her mother defrauded him to an extent sufficient to avoid res judicata. Id. Grice's failure to investigate, however, was based not upon their representations but upon Grice's mistaken belief that his attorney had investigated the matter fully and had concluded that Grice could not be the father of the child. Grice has failed to show reasonable reliance or proximate cause, which are essential elements of fraud. *Garcia v. Unique Realty &c. Co.,* 205 Ga. App. 876, 877-878 (1) (424 SE2d 14) (1992). In contending that Grice need not assert reasonable reliance or proximate cause because he was not a *participant* in the fraud, the dissent overlooks the multitude of Georgia decisions requiring that these essential elements be shown in every case of fraud, however innocent the claimant. Grice's allegation of fraud, therefore, is insufficient to overcome the res judicata effect of the first divorce decree.

The second divorce decree states that the child is the issue of Detwiler's marriage to Ogle. The trial court correctly found that "Ogle has acknowledged [the child] as his son and supported him for thirteen years, except of course during the periods of Ogle's incarcer-

ation. Ogle is [the child's] 'real father' despite Ogle's sins and regardless of what a blood test might show." The effect of Grice's petition would be to "de-legitimate" a 13-year-old child and then "re-legitimate" him as the offspring of a different marriage. "[I]t is clear from our examination of the legitimation and paternity statutes that the primary purpose of these statutes is to provide for the establishment rather than the disestablishment of legitimacy and paternity. . . . That these statutes should be used to establish legitimacy and paternity is appropriate; it is certainly not in the legitimate child's best interest to be rendered illegitimate. Moreover, public policy will not permit a mother and an alleged father to enlist the aid of the courts to disturb the emotional ties existing between a child and his legal father after sitting on their rights for the first three years of the child's life." (Citations omitted.) *Ghrist,* supra at 419. Certainly after the lapse of 13 years, public policy forbids the court from becoming involved in this inter-familial dispute.

*Judgment affirmed. Andrews, C. J., Birdsong, P. J., Ruffin and Eldridge, JJ., concur. McMurray, P. J., and Beasley, J., dissent.*

BEASLEY, Judge, dissenting.

I respectfully dissent, as the facts found by the trial court compel a blood test to resolve scientifically the issue of Detwiler's son's paternal parentage.

During Detwiler's marriage to Ogle, Ogle was twice incarcerated for felony possession of marijuana, as he had been before in 1978. Detwiler became addicted to crack cocaine and was imprisoned in 1995. Custody of the child was given to Ogle. In 1996, at the age of 13, the child was adjudicated delinquent for taking a firearm to school and was placed in a boot camp. See OCGA § 42-8-35.1.

In the spring of 1996 Detwiler's mother, concerned for the child's welfare, contacted Grice, informed him the child was his biological son, and admitted that she and Detwiler had deceived Grice in 1982 because they feared he would seek custody and take the child to Mexico. During Detwiler's pregnancy, Grice had taken birth assistance classes and expressed a willingness to treat the child as his own, even though told it was not his. Detwiler, however, continued to seek a divorce and put her maiden name on the child's birth certificate as the child's surname.

Eight weeks after being informed that the child was his issue, Grice petitioned to legitimate the child and to be awarded custody. See OCGA § 19-7-22. He later amended the petition to include requests to establish paternity, see OCGA § 19-7-43 (a) (5), and for the court to order blood tests to resolve any doubt as to paternity, see OCGA § 19-7-45. Ogle, but not Detwiler, answered the petition. The court heard the petition on the merits. At the time of the hearing

Ogle and Detwiler were engaged in a custody dispute. During the hearing, Ogle's current wife (who was also the former wife of Detwiler's brother) testified that Ogle had struck her on the head at least three times in the past six years, once requiring stitches, and that he had a drinking problem. Detwiler's mother testified that the child does not get along with Ogle, they fight constantly, the child has run away, and Ogle abuses alcohol and takes drugs.

The court denied Grice's petition on the basis that examining paternity was not in the child's best interests.

Ogle contends that review of the court's "best interests" decision is not necessary because Grice had the opportunity to establish paternity in 1983, abandoned that opportunity, and is barred by res judicata or collateral estoppel from seeking relief now. Ogle had raised res judicata in his answer and at the beginning of the hearing. The court orally denied the motion, and Ogle has not cross-appealed.

OCGA § 9-12-40 codifies the doctrine of res judicata: "A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside." See *McIver v. Jones*, 209 Ga. App. 670, 672 (434 SE2d 504) (1993). " 'Collateral estoppel precludes readjudication of an issue previously adjudicated between the parties or their privies in another action.' " (Citation omitted.) *Ghrist v. Fricks*, 219 Ga. App. 415, 417 (1) (465 SE2d 501) (1995). " 'Parties to stipulations and agreements entered into in the course of judicial proceedings are estopped from taking positions inconsistent therewith, and no litigant will be heard to complain unless it be made plainly to appear that the consent of the complaining party was obtained by fraud, or mistake.' " (Citation omitted.) Id. See also *Dept. of Human Resources v. Johnston*, 220 Ga. App. 477, 478 (1) (469 SE2d 525) (1996) ("[I]n the absence of fraud or mistake, where the issue of paternity has previously been decided, it cannot be relitigated.").

Grice contends his failure to offer a defense or contest custody in his divorce from Detwiler was the result of the fraud perpetrated on him by Detwiler and her mother. The court found that the two women in fact had committed fraud in 1982 as to Grice's paternity. Although Ogle argues Grice did not rely on the representations of Detwiler and her mother but rather on the investigations of his divorce attorney, Grice's testimony clearly shows the former. Ogle's argument that fraud has not been shown because it is not established the child was fathered by Grice ignores not only that such is the purpose of the blood test but also that Detwiler's mother testified she and her daughter agreed to deceive Grice about paternity. The finding of fraud was amply justified. This Court cannot reject it and

find otherwise. See *Edwards v. Wilson*, 185 Ga. App. 514, 515 (1) (364 SE2d 642) (1988). Such a fraud upon a divorcing spouse, upon the child, and upon the court itself during a later divorce proceeding not involving the same party is no shield against ascertainment of the truth when the fraud is discovered.

Thus, the holding in *Ghrist*, supra, does not control. There the putative father who attempted to relitigate the issue of paternity was a party to the fraud, and at the time of the divorce decree, he had all the knowledge he later claimed as the basis for changing the child's paternity. Because of that knowledge, and his active participation with the mother in concealing the facts, collateral estoppel was appropriate. He was not defrauded. Grice, on the other hand, had no such knowledge but was the victim of the fraud and is in a situation reverse from Fricks' as it pertains to this later attempt to establish paternity. The doctrines of collateral estoppel and res judicata do not apply. The conclusive presumption of law represented by these doctrines must bow to truth when it is established that the presumption is built on fraud. This principle is recognized in, among other cases, *Ghrist*, supra at 417; *Dept. of Human Resources v. Johnston*, supra; *Macuch v. Pettey*, 170 Ga. App. 467, 468 (1) (317 SE2d 262) (1984); *McDonald v. Hester*, 115 Ga. App. 740, 741 (155 SE2d 720) (1967).

The trial court found fraud. This Court cannot challenge Grice's reliance on the misrepresentation without substituting itself as factfinder. The trial court's finding of fraud has not even been cross-appealed.

Moreover, the issue of whether the child was fathered by Grice was not adjudicated in the only proceeding in which Grice was a party, i.e., the divorce action brought by Detwiler, which Grice did not contest. It covered only their relationship, not Grice's with the child. Likewise is the case of *Dept. of Human Resources v. Johnston*, supra, where the Court rejected application of the doctrine of res judicata because the evidence did not show that the issue of paternity had been previously litigated between the parties. In *Ghrist*, supra at 416-417, the divorce decree between Ghrist and Fricks expressly incorporated a settlement agreement referencing "their" minor child and setting out Ghrist's visitation rights and support responsibilities.

The court's decision whether to grant a petition for legitimation is within its discretion. *Alexander v. Guthrie*, 216 Ga. App. 460, 461-462 (1) (454 SE2d 805) (1995). Whether a blood test is to be ordered under OCGA § 19-7-45 is also a matter of discretion in cases such as this. The word in the statute is "may." Nevertheless blood tests regarding paternity are judicially recognized as valuable contributors to the search for truth, as they "inject scientific objectivity into the pertinent inquiry." *Whitman v. State of Ga.*, 212 Ga. App. 523, 524

(442 SE2d 313) (1994). The significance of parentage-determination genetic testing is so highly regarded that a statutory rebuttable presumption has been created for certain results, and evidence of a refusal to submit is admissible to show that the alleged father is not precluded from parentage. OCGA § 19-7-46 (b) and (c).

The court found and expressed concern about Ogle's and Detwiler's incarcerations and their effect on the child. There was no suggestion in the court's order or remarks that Grice would be an unfit father, and no evidence was introduced indicating he would be. The court nonetheless concluded that, given the passage of time, it was not in the child's best interests to open the question of his paternity. Not noted by the court was the uncontradicted testimony that the child has now been informed that Grice is his biological father and has made at least one attempt to telephone Grice, although he broke the telephone connection before Grice was on the line. Thus, as to the child, the issue of paternity is not closed in a very real and personal sense. It can be resolved by the simple expedient of a test. The length of time during which truth is deliberately hidden should not insulate it from exposure.

At the time of hearing, the child was almost 14 years of age. He has since passed that mark. In a custody case, a child of such age has the right to choose with which parent he wishes to live, unless the court determines that parent is not a fit and proper person to have custody. OCGA § 19-9-3 (a). No guardian ad litem was appointed. See OCGA § 19-7-44 (a). If Grice is the biological father, the child should have the right to make the statutory election. He should also be enabled to enjoy all the rights of sonship. The child's interests are no less important, and should be no less cognizable in law, than his father's.

The court abused its discretion in denying the requested blood test for the new evidence sought by Grice, which test the court found Ogle himself was willing to take, and in denying the legitimation petition without benefit of a blood test. Discovery of the fraud dissolved the conclusiveness which even the doctrine of res judicata provides. See Smith v. Ga. Dept. of Human Resources, 226 Ga. App. 491, 493 (1) (487 SE2d 94) (1997).

I am authorized to state that Presiding Judge McMurray joins in this dissent.

DECIDED JULY 11, 1997.

Jackson & Schiavone, Pattie J. Williams, for appellant.
Gregory N. Crawford, for appellees.