**SECOND DIVISION**
**BARNES, P. J.,**
**RICKMAN and SELF, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 13, 2017**

# In the Court of Appeals of Georgia

A16A1705. S. D. E., INC. v. FINLEY.

BARNES, Presiding Judge.

Timothy C. Finley, Jr. filed a personal injury action against S. D. E., Inc., after he slipped and fell at a McDonald's restaurant in Summerville, Georgia owned by the corporation. The shift manager at the restaurant was served with a copy of the complaint, and when S. D. E. did not answer or otherwise appear, the trial court ultimately entered a default judgment in favor of Finley for $250,000. The trial court denied S. D. E.'s motion to set aside the judgment, and S. D. E. sought discretionary review of its order, which this Court granted. This appeal ensued. On appeal, S. D. E. contends that the trial court erred in concluding that service of process on a shift manager at one of its restaurants was sufficient to acquire personal jurisdiction over the corporation, the trial court erred in denying its motion to vacate because OCGA § 9-11-5 (a) violates the Georgia and United States Constitutions, and the $250,000

damages judgment is grossly excessive and unconstitutional. For the reasons that follow, we affirm.

S. D. E. is a Georgia corporation that owns and operates four McDonald's restaurants in the state. It employs approximately 250 people, with about 82 of them employed at the Summerville restaurant. On October 23, 2014, Finley was allegedly injured after a fall at the restaurant. He filed a complaint against S. D. E. on December 5, 2014, and on December 8, 2014, a deputy sheriff served Francis Andrews, the shift manager at the restaurant, with a copy of the summons and complaint. Andrews is one of nine shift managers employed by S. D. E. at its restaurants.[1]

According to Andrews, she was working "the front line"when a man entered the restaurant and asked her to sign for some papers. Andrews testified that, despite his uniform, she did not know the man was a deputy sheriff or that the papers were a legal summons and complaint. She signed for them, took them back to the office, and laid them on the counter, because "that's where we . . . take everything we sign for." Andrews did not tell anyone about the documents and did not know what

---

[1] S. D. E.'s registration with the Secretary of State lists Stephen Ensley as the company's registered agent at an address in LaFayette. Finley did not attempt to serve Ensley.

happened to them afterward, but they were never transmitted to upper management. Andrews averred that as a shift manager, her duties include "monitoring cashier performance, safety, security, . . . profitability, inventory management and, generally, ensuring quality service and cleanliness to customers," but that as a shift manager she does not "exercise a supervisory or managerial role." She further averred that she did "not have the authority to and [was] not supposed to accept service on behalf of the corporation."

When S. D. E. did not file an answer or other defensive pleading, upon a motion by Finley, on January 30, 2015 the trial court entered a default judgment against S. D. E. as to liability. The trial court then scheduled a hearing on damages, and S. D. E., which apparently did not have notice of the hearing, did not attend. On February 6, 2015, the trial court entered judgment in favor of Finley for $250,000, plus interest and costs. On February 20, 2015, Finley sent a letter to S. D. E. at its LaFayette corporate office, informing it of the judgment, and requesting payment. On March 17, 2015, S. D. E. moved to set aside the judgment, arguing that the court had never obtained personal jurisdiction over it because it had not been properly served. S. D. E. argued that Andrews lacked sufficient managerial or supervisory authority

3

to be its agent for service of process. Following a hearing, the trial court denied the motion, finding that

> [t]he testimony of Frances Andrews in her deposition constitutes . . . evidence that when she was served with the Complaint and Summons she was, in fact, the corporate agent of the Defendant and, at all times relevant, was exercising a managerial and supervisory role of her principal, S. D. E., Inc.

1. S. D. E first contends that the trial court erred in finding that service of process on Andrews was effective to acquire personal jurisdiction over S. D. E. It contends that a shift manager does not have the supervisory or managerial authority contemplated by OCGA § 9-11-4 (e) to act on behalf of the corporation. According to S. D. E., within its organizational structure, the shift managers are "not 'managers' in the classic sense of one, who . . . hires, promotes, discharges, assigns, rewards, or disciplines other employees, or recommends such actions."

> Under Georgia law, when the defense of lack of personal jurisdiction due to defective service is raised by way of a motion to set aside the judgment, the trial court sits as the trier of fact. Our standard of review in this regard is the any evidence rule, and absent an abuse of discretion, we will not reverse a trial court's refusal to set aside a

4

judgment. However, where the facts are undisputed and the question is one of law, we review the ruling de novo.

(Citations and punctuation omitted.) *Hooks v. McCondichie Properties 1, LP*, 330 Ga. App. 583, 584 (767 SE2d 517) (2015).

OCGA § 9-11-4 (e) (1) (A) provides that service upon a Georgia corporation shall be made by delivering a copy of the summons and complaint "to the president or other officer of such corporation . . . , a managing agent thereof, or a registered agent thereof." "'Managing agent' means a person employed by a corporation . . . who is at an office or facility in this state and who has managerial or supervisory authority for such corporation." OCGA § 9-11-4 (e) (1) (B).

The former version of the statute, under which the most recent case law was decided, provided that service on a Georgia corporation could be made upon "the president or other officer of the corporation, secretary, cashier, managing agent or other agent thereof." Former OCGA § 9-11-4 (e) (1).[2] The 2013 revision to the statute omitted cashier, secretary, and "other agent,"and added "registered agent." Thus, under the current version of OCGA § 9-11-4 (e), since it is undisputed that Andrews

---

[2] The statute was amended effective July 1, 2013. See Ga. L. 2013, p. 591, §1/SB 113.

5

was not a registered agent of the corporation, the service upon S. D. E. was proper if Andrews was a managing or supervisory agent of the corporation. See OCGA § 1-3-1 (a) ("In all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy."); *Evans v. State*, 334 Ga. App. 104, 106 (778 SE2d 360) (2015).

In denying S. D. E.'s motion set aside and vacate the judgment, the trial court found that Andrews' deposition testimony clearly demonstrated that "when she was served with the Complaint and Summons she was, in fact, the corporate agent of [S. D. E.] and, at all times relevant, was exercising a managerial and supervisory role of her principal, S. D. E." We agree.

"The purpose of service is notice, and not every employee can reasonably be expected to notify the corporate officers of the receipt of the complaint."(Citation and punctuation omitted.) *Austin v. Austin*, 245 Ga. 487, 490 (265 SE2d 788) (1980). See *Scott v. Atlanta Dairies Cooperative*, 239 Ga. 721, 724 (2) (238 SE2d 340) (1977) (service of process "must be made on an agent whose position is such as to afford *reasonable* assurance that he will inform his corporate principal that such process has been served upon him") (emphasis supplied). Even under the former version of the statute, in cases where employee was not an officer of the corporation and had not

been expressly designated to receive service, we have looked to whether the employee "occup[ied] some position of managerial or supervisory responsibility within the organization." *G. J. Soracco, M. D., P. C. v. Domineck*, 233 Ga. App. 166, 167 (502 SE2d 732) (1998) (physical precedent only) (service upon a medical assistant with no managerial duties insufficient to serve a professional corporation); *Bowers v. Economation*, 208 Ga. App. 661, 663 (431 SE2d 420) (1993) (service upon a "mere" receptionist without managerial or supervisory responsibilities will not suffice). But see *Ogles v. Globe Oil Co.*, 171 Ga. App. 785, 786 (320 SE2d 848) (1984) (serving the manager of a company store who was responsible for daily operations, supervising employees, and submitting daily reports to corporate headquarters held to be sufficient); *Southwest Community Hosp. &c. Center v. Thompson*, 165 Ga. App. 442, 443-444 (4) (301 SE2d 501) (1983) (service sufficient upon a secretary who had accepted service in the past and was knowledgeable about the procedures to be used when service did occur).

Here, in her affidavit, Andrews said that she did not have a supervisory or managerial role at the restaurant, did not make high-level or emergency decisions without the approval of the store manager or supervisor, was "not charged with relaying any communications to higher corporate levels," and had no authority to

7

accept service on behalf of S. D. E. She further averred that the supervisor was to "be notified if any person attempts to serve or deliver legal documents."

At her deposition, however, Andrews testified that during her shift, she was responsible for supervising the other employees and ensuring the "effective operation" of the restaurant. To that end, she handled customer complaints, and ensured the quality of the food, service, cleanliness and safety of the premises. In the event of an accident, Andrews would create a report for upper management, and she also kept up with inventory, tracked waste, and made bank deposits at the end of her shift. Andrews testified that she saw her role "more as a manager" rather than a supervisor.

The supervisor of the restaurants averred that as a shift manager, Andrews did "not exercise a supervisory role." According to the supervisor, Andrews' job responsibilities included "monitoring cashier performance, safety, security, and profitability, inventory management and, generally, ensuring quality, service and cleanliness to customers. She further averred that Andrews had "no capacity to bind [S. D. E]," could not "make high-level or emergency decisions without a store manager or supervisor's approval," and was "not supposed to accept service on behalf of the corporation." At her deposition, the supervisor testified that, according to S.

D. E.'s protocol, as supervisor, she was authorized to accept service for the corporation, but that shift managers were instructed to "send [the process server] back" if they attempted to serve them with legal papers. However, despite this alleged corporate protocol of rejecting service, the supervisor acknowledged that another shift manager had also recently accepted service of a summons and complaint against S. D. E., but had successfully then given the document to the supervisor. She did not testify that the shift manager was reprimanded for disregarding protocol or that she should not have accepted the papers.

We agree with the trial court that there was some evidence that Andrews' position as shift manager at the restaurant was of a supervisory or managerial nature such that she was a managing agent of S. D. E pursuant to OCGA § 9-11-4 (e).

Here, the evidence demonstrated that Andrews was responsible for supervising the other employees on her shift and had managerial responsibilities, including handling customer complaints, quality control, and creating reports for upper management. Moreover, given that another shift manager had also been served and had successfully transmitted the summons and complaint to a corporate officer, there was also evidence that it was anticipated that someone in that position would be served as an agent of the corporate principal.

9

Accordingly, the trial court did not err in denying S. D. E.'s motion to set aside the judgment based on insufficiency of service.

2. S. D. E. also contends that OCGA § 9-11-5 violates due process because he was not afforded notice or the opportunity to be heard. Upon review, we cannot consider this argument.

The record reveals that S. D. E did not raise the constitutional argument below and thus failed to invoke any ruling from the trial court regarding the constitutionality of the statute. "A constitutional issue cannot be considered when asserted for the first time on appeal but must be clearly raised in the trial court and distinctly ruled upon there. Contentions regarding a constitutional issue which were not made below are thus not passed upon here." (Citation and punctuation omitted.) *Flott v. Southeast Permanente &c. Grp.*, 288 Ga. App. 730, 732 (2) (655 SE2d 242) (2007).

3. Likewise, we also cannot consider for the first time on appeal S. D. E.'s contention that the damage award was so grossly excessive that it violates the Eighth and Fourteenth Amendments of the U. S. Constitution. This argument also was not raised or ruled on by the trial court. Moreover, even if this argument had been raised and ruled on, the record does not include a transcript of the damages hearing or any other evidence related to Finley's injuries. Such issues cannot be determined absent

10

a trial transcript or evidence from which the damages may be evaluated in light of the judgment. *Moss v. Flav-O-Rich, Inc.*, 231 Ga. App. 288, 288 (498 SE2d 361) (1998). S. D. E. appears to have made no attempt to secure a transcript or a reconstructed transcript of the proceedings approved by the trial judge; therefore, we must assume that the judgment was correct and supported by the evidence. See *Wells Fargo Home Mtg., Inc. v. Cook*, 267 Ga. App. 368, 369 (1) (599 SE2d 319) (2004) (this Court cannot determine if damages are excessive, because trial record did not provide complete record of what transpired in the case).

*Judgment affirmed. Rickman and Self, JJ., concur.*