**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 10, 2025**

# In the Court of Appeals of Georgia

A24A1339. VAN AMBURGH v. MORRIS.

DOYLE, Presiding Judge.

This granted discretionary appeal arises from the trial court's dismissal of Samuel Van Amburgh's petition to establish paternity, legitimation, visitation, custody, and child support regarding the biological child ("the child") of Mallori Morris. For the reasons that follow, we vacate the dismissal order and remand for further proceedings consistent with this opinion.

"'We conduct a de novo review of a trial court's ruling on a motion to dismiss.'"[1]

---

[1] (Citation omitted.) *Vanterpool v. Patton*, 352 Ga. App. 584 (835 SE2d 407) (2019).

In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor. . . . A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes. Thus, in ruling on a motion to dismiss, a trial court is authorized to consider exhibits attached to and incorporated into the [pleading]. If there is any discrepancy between the allegations in the [pleading] and the attached exhibits, the latter control.[2]

So viewed, the record shows that in late January 2023, Van Amburgh filed the petition at issue, seeking to determine paternity of Morris's child born in March 2020 and legitimate the child if he was the biological father. Morris answered and moved to dismiss the petition under the theories of res judicata, collateral estoppel, or because Van Amburgh had abandoned his opportunity interest to legitimate the child. Morris also contended that it was not in the child's best interest for Van Amburgh to be granted parental rights based on his significant mental illness, history of substance abuse, and erratic and unstable living and work situations.

The pleadings and attachments reveal that on January 20, 2019, Van Amburgh and Morris were married and eventually resided in Texas, and on March 3, 2020,

---

[2] (Citations and punctuation omitted.) *Lord v. Lowe*, 318 Ga. App. 222, 223-224 (741 SE2d 155) (2012).

Morris filed a petition for annulment to which Van Amburgh had consented. In the affidavit for annulment that was attached to her answer, Morris averred the annulment was sought on the basis that Van Amburgh had fraudulently concealed "a history of significant mental illness and alcohol and drug abuse," and he had left their home months earlier without returning. The court granted the petition the next day, on March 4, 2020. The decree of annulment recited that, among other things, "no child was born or adopted of the marriage," and Morris's affidavit for annulment averred that "[n]o children were born or adopted during the marriage." Also attached to her motion was a waiver of service affidavit related to the annulment and signed by Van Amburgh, acknowledging that he had been given a copy of the petition,[3] that he had read and understood the contents, and that he consented to it.

Attached to Morris's brief in support of her motion to dismiss was a copy of an email sent by Van Amburgh to her and other individuals (purportedly attorneys) on January 1, 2020, which stated:

By now it is perhaps apparent that Mallori and me have been separated.

---

[3] Van Amburgh's affidavit calls the annulment "a divorce," but there is no contention that he received a copy of any petition for divorce.

3

Through legal counsel and by faith, I feel it appropriate to send this email as a final correspondence to Mallori and begin the divorce process.

Since we have a prenuptial agreement that was requested by Mallori and trust(s) in place to correspond with all assets — I believe our next step is to bring our case in-front of a judge.

For the record, I am Ok with giving Mallori 100% temporary control of our child for the next 7 years. A DNA test will need to be done upon birth to verify that it is truly my child (I am very hopefully [sic] that it is my child, yet real doubt validated by factual evidence does slightly stipulate reasonable cause of doubt which is the reason for the required DNA test).

If and when that juncture becomes a present moment — I will be fully prepared to continue the conversation of how to best support WQV whether he be mine by conception or by nurture (meaning I will love him from afar, no matter what).

Morris gave birth to the child in March 2020, within weeks of the issuance of the decree of annulment.

In response to Morris's motion to dismiss his legitimation petition, Van Amburgh responded that Georgia law did not support Morris's contention that the annulment constituted res judicata of the issue of paternity, that he had not intended

to have the annulment litigate his parental rights, that he had attempted to visit Morris and the child at some point over the last three years, and that his family had provided financial support to Morris.

After a hearing on Morris's motion to dismiss, the trial court granted the motion, announcing his intended ruling at the close of the May 20, 2023 hearing and issuing the final order on December 18, 2023.[4] The trial court found that Van Amburgh had voluntarily agreed to the annulment and that his agreement to the statement therein that "no child was born . . . of the marriage" foreclosed any further litigation on the matter of his paternity or legitimation of the child because he had failed to raise paternity at his first opportunity, found that he had abandoned his

---

[4] On September 27, 2023, Van Amburgh filed a motion to stay, contending that he had filed on July 25, 2023, in Texas a declaratory judgment motion related to the legal effect of the parties' 2020 annulment (this was filed after the trial court had announced its intention to rule in Morris's favor on her motion to dismiss). The trial court never ruled on Van Amburgh's motion to stay. A September 3, 2024 order in the Texas declaratory judgment case was provided to this Court on September 9, 2024, and we allowed the parties to brief the issue of the effect of the Texas court's declaratory judgment, if any. Because this appeal and the trial court's ruling turn on the application of Georgia law to the import of the Texas order, the declaratory judgment order has no bearing on this decision. Van Amburgh has stated that he has pending in Texas courts a petition for bill of review asking to set aside the annulment. No order related thereto has been filed in this Court.

opportunity interest, and dismissed his petition. Van Amburgh filed a motion for reconsideration, which the trial court denied. This appeal followed.

1. Van Ambrugh argues that the trial court erred by granting Morris's motion to dismiss his legitimation.

(a) As an initial matter, we note that

[a] decree of annulment, when rendered, shall have the effect of a total divorce between the parties of a void marriage and shall return the parties thereto to their original status before marriage. However, a decree of annulment shall not operate to relieve the parties to a marriage of . . . responsibilities occasioned by the marriage.[5]

Speaking to those responsibilities occasioned by marriage, OCGA § 19-3-5 (a) states that "the issue of such a marriage *born before* the marriage is annulled and declared void by a competent court shall be legitimate."[6] The child in this case, however, was

---

[5] OCGA § 19-4-5.

[6] (Emphasis supplied.) See also *Hall v. Coleman*, 242 Ga. App. 576, 578-579 (1) (530 SE2d 485) (2000) (in a proceeding for third-party adoption in which the husband intervened the "child was legitimate [with regard to the husband] because the child was the issue of the marriage, born before the marriage was declared void"), later proceedings in *Hall v. Coleman*, 264 Ga. App. 650, 653-654 (1) (592 SE2d 120) (2003) (affirming the termination of the father's parental rights and granting adoption petition).

born after issuance of the annulment. In his legitimation petition, Van Amburgh sought to establish paternity of the child based on his belief that he is the child's biological father and requested to be legitimated as the legal father of the child. Thus, Van Amburgh was not the legal father of Morris's child at the time his petition was filed because the annulment decree was issued prior to the child's birth and because of the concession in his legitimation petition. Any contention otherwise in his appellate brief is of no moment.

(b) Van Amburgh raises several arguments including that his due process rights will have been violated if the trial court's order stands, that the annulment was fraudulently entered because Morris did not tell the Texas court she was pregnant at the time,[7] and that his treatment in a substance abuse program at the time of the annulment affected its validity, among other things. These contentions were either not

---

[7] Given that Van Amburgh was aware that Morris was eight months pregnant at the time the annulment was filed and given his email from the January preceding the annulment, we find unpersuasive Van Amburgh's contention that the annulment was perpetrated by fraud. See, e.g., *Dept. of Human Resources v. Fenner*, 235 Ga. App. 233, 234-235 (2) (510 SE2d 534) (1998) (holding that a legal father could not attack on the basis of fraud a divorce decree finding that he was the father of the child because he knew of the potential that he was not the biological father at the time the decree was entered and he failed to take action to contest the finding at that time or for the next three years).

raised below or are unsupported by citation to authority.[8] Nothing that Morris did

prevented Van Amburgh from seeking the advice of counsel prior to agreeing to the

annulment. He did not object to the annulment in court, and he did not countersue for

divorce. "[U]nder Georgia law, unless a judgment is void on its face, it may not be

attacked collaterally. A judgment of a court having jurisdiction over the parties and the

subject matter is presumptively binding until set aside in a manner prescribed by law.

This is true regardless of any purported irregularity or error in the judgment."[9] The

annulment had not been set aside prior to entry of the trial court judgment, nor has

Van Amburgh submitted evidence that the annulment has been set aside since then.

Accordingly, the many ancillary arguments raised in his appellate brief are without

merit.

(c) It has long been the case in this state that the doctrines of res judicata and

collateral estoppel may preclude a claim related to parental rights, including

---

[8] See, e.g., *S. D. E., Inc. v. Finley*, 340 Ga. App. 684, 688 (2) (798 SE2d 303) (2017) ("A constitutional issue cannot be considered when asserted for the first time on appeal but must be clearly raised in the trial court and distinctly ruled upon there. Contentions regarding a constitutional issue which were not made below are thus not passed upon here.").

[9] (Citations and punctuation omitted.) *Grand v. Hope*, 274 Ga. App. 626, 628 (1) (617 SE2d 593) (2005).

legitimation, if the issue had previously been adjudicated in another court decision or conceded in another court pleading.[10] Generally, such arguments arise in relation to divorce decrees because divorce is the normal avenue for adjudicating dissolution of marriage when children are involved. In any event, the limited law that we have found establishes that res judicata and collateral estoppel apply to annulment decrees just like any other judicial decree.[11]

(d) As for the substance of whether the annulment precluded Van Amburgh's legitimation petition, we conclude that it did not.

"A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules

---

[10] See, e.g., *Vanderpool*, 352 Ga. App. at 587-589 (1), (2); *Brooks v. Lopez*, 350 Ga. App. 390, 392 (1) (829 SE2d 470) (2019); *Coleman v. Grimes*, 250 Ga. App. 880, 887-889 (1) (553 SE2d 185) (2001); *Dept. of Human Resources v. Fenner*, 235 Ga. App. 233, 234-235 (2) (510 SE2d 534) (1998); *Grice v. Detwiler*, 227 Ga. App. 280, 281-283 (488 SE2d 755) (1997); *Ghrist v. Fricks*, 219 Ga. App. 415, 416-417 (1) (465 SE2d 501) (1995), overruled on other grounds as stated in *Brine v. Shipp*, 291 Ga. 376, 380 (3) (729 SE2d 393) (2012), superseded by statute as stated in *Mathenia v. Brumbelow*, 308 Ga. 714, 720 (3) (a) (843 SE2d 582) (2020); *Dept. of Human Resources v. Hambrick*, 216 Ga. App. 606, 606-607 (455 SE2d 120) (1995); *Hardy v. Acremont*, 213 Ga. App. 243, 245 (1) (444 SE2d 327) (1994); *Fleeman v. Dept. of Human Resources*, 208 Ga. App. 97, 97-98 (430 SE2d 135) (1993).

[11] See, e.g., *Hamrick v. Bonner*, 182 Ga. App. 76, 78 (4) (354 SE2d 687) (1987).

of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside."[12]

In this instance, however, it is undisputed that both Van Amburgh and Morris were aware that Morris was eight months pregnant at the time, and they both consented to entry of the annulment including its statement that "no child was born or adopted of the marriage." Moreover, it is clear from Van Amburgh's email sent a few months before the annulment that he was not interested in pursuing any legal rights to or custody of the child at that time, if ever, and he called into question whether he was biologically related to the child.

All that said, we do not agree with the trial court that the annulment decree and the statement therein prohibited, as a matter of law, later adjudication of the question of Van Amburgh's paternity. Unlike this Court's cases in *Ghrist v. Fricks*,[13] *Grice v.*

---

[12] OCGA § 9-12-40. See also *Dept. of Human Resources v. Fleeman*, 263 Ga. 756, 758 (2) (a) (439 SE2d 474) (1994) ("Collateral estoppel precludes readjudication of an issue previously adjudicated between the parties or their privies in another action"); *Coleman v. Grimes*, 250 Ga. App. 880, 887-889 (1) (553 SE2d 185) (2001) (holding that prior determination of legitimation was dispositive and prohibited relitigation of issue in action for termination and step-parent adoption).

[13] 219 Ga. App. at 415. See also *Hambrick*, 216 Ga. App. at 606 (reversing order directing a blood test to determine whether defendant in child support action was biological father of child because the defendant's divorce decree found that he was the

*Detwiler*,[14] or *Hardy v. Acremont*,[15] the annulment language is ambiguous given that the child had not yet been born and given that an annulment voids a marriage as if it never existed.[16] For instance, in *Ghrist*, the mother was estopped from arguing that her ex-husband was not the legal father of her child (who was actually the biological child of her current husband) because she consented to a divorce decree that included a finding that the child was born of the marriage to her ex-husband.[17] Likewise, in *Hardy*, an ex-husband was estopped from arguing that he was the parent of a child even though he was listed on the child's birth certificate and paid child support because his divorce decree, which was entered prior to the child's birth, from the mother stated that no child was born of or expected of the marriage.[18] Finally, in *Grice*, this Court found that the divorce decree between the mother and purported biological

---

natural father and, therefore, the issue of paternity was foreclosed by res judicata).

[14] 227 Ga. App. at 280.

[15] 213 Ga. App. at 243.

[16] See *Hamrick*, 182 Ga. App. at 77 (3) ("[T]he effect of an annulment is to 'return the parties thereto to their original status before marriage.'").

[17] 219 Ga. App. at 417-419 (1).

[18] 213 Ga. App. at 245-246 (1).

father was silent on the subject of children thereby barring the purported biological father's paternity claims.[19] In that case, however, this Court also noted that the mother's divorce petition alleged that the child was not the biological father's child, the biological father failed to respond to the petition, and a second divorce decree between the mother and her second husband listed the child as issue of the second marriage.[20]

Here, if the statement in the parties' annulment had included that "no children were expected of the marriage," we may have agreed with the trial court's order that Van Amburgh should have raised a legitimation claim or countersued for divorce at that time. But given that the statement did not explicitly include children to be born in the future, leading him to believe that he could adjudicate the matter after the birth of the child, we do not conclude that the annulment foreclosed Van Amburgh's legitimation petition on the bases of res judicata or collateral estoppel.

2. The order also determined that Van Amburgh abandoned his opportunity interest in pursuing legitimation. The Supreme Court of Georgia

---

[19] 227 Ga. App. at 280-282.

[20] Id. at 281.

has held that unwed fathers possess an opportunity interest to develop a relationship with their children that is protected by due process of law. This opportunity interest begins at conception and endures probably throughout the minority of the child. But it is not indestructible. Indeed, an unwed father's opportunity interest can be abandoned if not timely pursued. Factors which may support a finding of abandonment include, without limitation, a biological father's inaction during pregnancy and at birth, a delay in filing a legitimation petition, and a lack of contact with the child.[21]

In order to appropriately address this question, the trial court needed to hold an evidentiary hearing, which it did not do.[22] And although we determined that the annulment decree, standing alone, did not prohibit the legitimation petition as a

---

[21] (Citations and punctuation omitted.) *Methenia*, 308 Ga. at 720-721 (3) (b) (holding that father had abandoned his opportunity interest in legitimation by failing to support mother during pregnancy and instead offering to pay for an abortion and by failing to file petition to legitimate for six months after child's birth), citing *In re Eason*, 257 Ga. 292, 296-297 (1) (358 SE2d 459) (1987). See also *Tyner v. Tyner*, 170 Ga. App. 877, 878 (1) (318 SE2d 675) (1984) (affirming the trial court determination that the mother had abandoned her child to the child's paternal grandparents by leaving the child with the grandparents for a period of years without support).

[22] See, e.g., *Mathenia*, 308 Ga. at 715-718 (1)-(2); *Tyner*, 170 Ga. App. at 877.

matter of law, the annulment and related documents are evidence that Van Amburgh may have abandoned his opportunity interest regarding paternity of Morris's child.[23]

Accordingly, we vacate the order dismissing Van Amburgh's petition and remand for an evidentiary hearing to first determine whether Van Amburgh abandoned his opportunity interest in legitimation[24] prior to addressing the remainder of the petition, if necessary.

3. Based on our holdings in Divisions 1 and 2, we need not address any outstanding arguments or other enumerations of error raised by Van Amburgh.

*Judgment vacated and case remanded with direction. Hodges and Watkins, JJ., concur.*

---

[23] See *Methenia*, 308 Ga. at 715-718 (1)-(2).

[24] See id.